**In re Judith A. CHOSA, o/b/o Roseblossom CHOSA, petitioner, Respondent,**

**v.**

**Diane TAGLIENTE, Appellant.**

No. A04–1400.

Court of Appeals of Minnesota.

March 22, 2005.

Judith A. Chosa, Ely, MN, pro se respondent.

William E. Maxwell, Legal Aid Service of NE Minnesota, Virginia, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge; HUDSON, Judge; and PORITSKY, Judge.*

## OPINION

HUDSON, Judge.

Appellant Diane Tagliente challenges the trial court's issuance of an order for protection, arguing that the evidence is insufficient to support the order. Because there is insufficient evidence to support the order for protection, we reverse.

## FACTS

On February 6, 2004, respondent Judith Chosa petitioned for an order for protection (OFP) from domestic abuse on behalf of her granddaughter, R.C., against R.C.'s mother, appellant Diane Tagliente. R.C. was approximately 19 months old when respondent petitioned for the OFP. Respondent alleged two incidents of domestic abuse in her affidavit: (1) on January 27, 2004, she observed appellant hit Sunrise Chosa, R.C.'s father and respondent's son, in front of R.C.; and (2) in July 2003, appellant was drunk and passed out in the middle of the road while R.C. was next to her in a baby carriage. Respondent requested custody of R.C. The trial court granted an ex parte temporary order for protection.

At the hearing on the OFP, respondent testified that on January 27, 2004, she observed appellant approach Sunrise from behind and knock him a "foot up in the air, half into the couch, the plants and the wall." Respondent testified that R.C. was standing there screaming, and that appellant did not pay attention to where R.C. was standing. Appellant admitted that she pushed Sunrise on January 27 after she "lost it" during an argument. Appellant admitted that R.C. was present when she pushed Sunrise.

Regarding the second allegation, appellant admitted that she drank alcohol on the day in question in July 2003, but stated, "most of the time [she] just had a buzz [from the alcohol]." Appellant denied that the baby carriage was in the *middle* of the road and that she was passed out, but admits she lay on her back briefly.

Respondent made additional allegations at the hearing that were not in her OFP petition. Respondent testified that when R.C. was one month old, appellant, R.C., respondent, and two friends went to a store. Appellant set R.C. in her carrier on the floor in a checkout aisle, unattended. Though R.C. was approximately ten feet from respondent, respondent's back was turned and she was unaware that appellant had set R.C. in the aisle. Constance Jones, the manager of the store, was "surprise[d]" to see appellant place R.C. on the floor of the checkout aisle and watched "to make sure the baby wasn't hurt."

Respondent also testified that sometime after July 2003, she heard R.C. screaming

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

and went to the bathroom where she observed appellant cleaning R.C.'s bottom by running water from the faucet full blast on R.C.'s genitals, while her legs were spread. Respondent testified that appellant was oblivious to the fact that R.C. was "being hurt" and screaming. Appellant admitted that she cleaned R.C.'s bottom by putting it under running water, but says she stopped this practice after respondent confronted her.

Sunrise testified that appellant left R.C. alone in July 2003 while he was doing laundry in another room. He found R.C. screaming, after he had been gone for about an hour. Sunrise testified that R.C.'s diaper looked like it had not been changed in hours. Appellant admitted leaving R.C. alone and not telling Sunrise that she was leaving to return some videos to the library because she thought Sunrise was coming back to where she left R.C.

Both Sunrise and respondent alleged that appellant breastfed R.C. while using alcohol and marijuana. Appellant denied using illegal drugs and/or alcohol while breastfeeding R.C. Appellant testified, "I wasn't doing any kind of drugs or alcohol when I was nursing her. The only time I did was socially when [respondent] had her, but then I pumped it out when I, before (sic)."

Appellant admitted that R.C. does not receive regular medical care.

On June 2, 2004, the trial court granted R.C. an OFP from appellant for one year. The trial court also awarded respondent sole temporary physical and shared legal custody of R.C., subject to appellant's parenting time. This appeal follows.

## ISSUE

Does the evidence support the trial court's issuance of a protective order pursuant to Minn.Stat. § 518B.01 (2004)?

## ANALYSIS

**** The decision to grant an order for protection (OFP) under the Domestic Abuse Act, Minn.Stat. ch. 518B (2004), is within the district court's discretion. *Mechtel v. Mechtel,* 528 N.W.2d 916, 920 (Minn.App.1995). District courts are authorized to issue an OFP to "restrain the abusing party from committing acts of domestic abuse." Minn.Stat. § 518B.01, subd. 6(a)(1) (2004). Domestic abuse includes: (1) physical harm, bodily injury, or assault; or (2) the infliction of fear of imminent physical harm, bodily injury, or assault by one family or household member against another. *Id.,* subd. 2(a)(1)–(2) (2004). In order to establish domestic abuse, a party must show "present harm or an intention on the part of the [alleged abuser] to do present harm." *Andrasko v. Andrasko,* 443 N.W.2d 228, 230 (Minn.App. 1989).

**** A district court's findings of fact will not be set aside unless they are clearly erroneous. Minn. R. Civ. P. 52.01. This court does not reconcile conflicting evidence; rather, we give great deference to the district court's factual findings. *Id.; see also Porch v. Gen. Motors Acceptance Corp.,* 642 N.W.2d 473, 477 (Minn.App. 2002), *review denied* (Minn. June 26, 2002). When reviewing the record, this court looks at the evidence "in the light most favorable to the court's findings." *Lossing v. Lossing,* 403 N.W.2d 688, 690 (Minn. App.1987). A trial court's finding of fact will be reversed only if, upon review of the entire evidence, a reviewing court is left with the definite and firm conviction that a mistake has been made. *Gjovik v. Strope,* 401 N.W.2d 664, 667 (Minn.1987).

The trial court found that appellant had committed acts of domestic abuse against R.C., including "[i]nappropriate hygiene and medical care of the child, leaving the

child unattended, active chemical dependency while caring for the child, and overall pattern of behavior endangering the physical well being of the child."

■ Appellant argues that the evidence is insufficient to find that appellant physically harmed or inflicted a fear of imminent physical harm on R.C. Appellant also argues that the trial court erred as a matter of law because its findings do not support its conclusion that there was domestic abuse.

■ Here, the events described in respondent's petition and at the hearing do not constitute domestic abuse. Because the court did not make a finding of domestic abuse based on appellant's hitting Sunrise in front of R.C. on January 27, 2004, the only specific allegations of domestic abuse that support the trial court's findings were incidents that occurred in July 2002 and July 2003. Past abusive behavior is a factor in determining cause for protection, though not dispositive. *Boniek v. Boniek,* 443 N.W.2d 196, 198 (Minn.App. 1989). But the district court cannot infer that when: (a) appellant left R.C. in the checkout aisle; (b) washed R.C.'s bottom with a stream of water; (c) left R.C. in the house without notifying Sunrise that she was leaving; (d) failed to ensure that R.C. has regular medical checkups; (e) breastfed R.C. after drinking alcohol or using marijuana; and (f) left R.C. unsupervised in her baby carriage while appellant was drunk; that appellant had a present intent to inflict fear of imminent bodily harm.

Moreover, there is no evidence of actual physical harm, bodily injury, or assault arising out of any of these incidents. Arguably, the only allegation that could have constituted physical harm or bodily injury was appellant's act of washing R.C.'s bottom under a full stream of water. But absent an allegation that the water was hot, we conclude that appellant's cleaning R.C.'s bottom in this manner was not domestic abuse. Because respondent did not produce evidence of any physical harm nor allege any intent to do present harm, the trial court erred in finding that domestic abuse occurred.

Furthermore, the findings themselves—even if supported by the evidence—do not support the conclusion that there was domestic abuse. *See Donovan v. Dixon,* 261 Minn. 455, 460, 113 N.W.2d 432, 435 (1962) (stating that the reviewing court determines whether the findings support the conclusions of law and judgment). The district court's findings—inappropriate hygiene and inadequate medical care of the child, leaving the child unattended, active chemical dependency while caring for the child, and an "overall pattern of behavior endangering the physical well being of the child"—may well evidence neglect, but they do not constitute domestic abuse.

Therefore, on this record, the trial court's finding of domestic abuse is clearly erroneous.

## DECISION

The trial court erred by issuing a protection order pursuant to Minn.Stat. § 518B.01 (2004) where the evidence was insufficient to warrant issuance of the order.

**Reversed.**