In the Matter of Michael S. SCHMIDT, on behalf of P.M.S., petitioner, Respondent,

v.

Robert H. COONS, Appellant.

No. A10–1425.

Court of Appeals of Minnesota.

March 22, 2011.

Thomas F. Murtha, Murtha Law Office, Duluth, MN, for respondent.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Michael J. Brandt, Jasper & Brandt, P.L.L.C., Anoka, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; JOHNSON, Chief Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

Appellant grandfather challenges the district court's decision to grant an order for protection (OFP) in favor of his grandchild, who lived in the household in which appellant abused his daughter, the child's mother. Appellant claims that the district court abused its discretion by issuing the OFP because the child's mother, not the child, was the alleged victim of the abuse. We affirm based on the scope of the district court's discretion under the governing statute. We further conclude that the OFP is properly supported by the court's findings and the findings are adequately supported by the evidence.

## FACTS

Respondent Michael Schmidt filed a petition for an OFP in May 2010, on behalf of his son, respondent P.M.S., then a three-and-a-half year old child.[1] Approximately six months prior to the filing of the petition, P.M.S. and his mother, Sarah Schmidt, moved into the home of appellant Robert Coons, who is Sarah Schmidt's father and P.M.S.'s grandfather. The move was prompted by Sarah and Michael Schmidt's separation. According to the OFP petition, P.M.S. told both Michael Schmidt and his paternal grandmother that appellant had slapped Sarah Schmidt. The district court appointed a guardian ad

1. P.M.S. was born on November 26, 2006.

litem (guardian) to represent P.M.S.'s interests.

The guardian submitted a report after interviewing key figures in P.M.S.'s life, including appellant, Michael Schmidt, Sarah Schmidt, and P.M.S.'s daycare provider. She did not interview P.M.S.'s paternal grandmother, despite the allegation that P.M.S. also told this relative that appellant had struck his mother.

The guardian's report includes a summary of information and her ultimate conclusion that the OFP should not issue. The guardian's recommendation was prompted by the absence of abuse "directed specifically" at P.M.S. and by questions on the motives of the petitioner because of disputed custody claims.

Relative to the abuse allegations, the guardian's report indicates that appellant admitted to having a history of "heated verbal arguments" with Sarah Schmidt beginning when she was a child and that he historically "slapped her face with an open hand as a form of discipline." According to the guardian, both appellant and Sarah Schmidt denied that this conduct continued into Sarah Schmidt's adulthood. Despite this observation, the guardian's report states: "That these disagreements and physical altercations between father and daughter continue in her adulthood is very unfortunate and concerning."

The guardian's report concludes that P.M.S. was "exposed to some domestic violence" in appellant's home, not "directed specifically at him." Although the testimony at the OFP hearing included discussion of an incident in which appellant spanked P.M.S. to discipline him, the guardian did not mention this event in her report.

At the OFP hearing in June 2010, appellant, the guardian, and P.M.S.'s parents testified. During the guardian's testimony, she reiterated that it was "very sad" that appellant was "still disciplining" Sarah Schmidt "at this point." She also testified that P.M.S. had heard an argument that resulted in appellant slapping Sarah Schmidt but that P.M.S. was not present when the assault occurred. Sarah Schmidt denied that the abuse occurred. Appellant admitted to spanking P.M.S. on one occasion to discipline him, but he asserted his Fifth Amendment right against self-incrimination and refused to testify about whether he had recently struck his daughter.

Contrary to the guardian's recommendation, the district court issued a two-year OFP prohibiting appellant from committing any acts of domestic abuse against P.M.S. or any acts that would have the effect of harming P.M.S., including striking any person while in the presence of P.M.S. The OFP did not prohibit appellant from having contact with P.M.S. The district court found that appellant slapped Sarah Schmidt in the face during a heated argument in April–May 2010 and that it was unknown whether P.M.S. witnessed the abuse. The court also found that P.M.S. "was at least in the residence when it happened." The court specifically rejected aspects of the guardian's testimony and report, stating that it did "not share in the [guardian's] seeming optimism that [appellant] will not strike [Sarah] Schmidt again."

Appellant filed a notice of appeal and a motion for reconsideration. In an August 2010 order, the district court amended the OFP, reiterating that appellant refrain from committing "any acts of domestic abuse that would have the effect of physically or emotionally harming [P.M.S.], including that he should "not hit or strike any . . . member of his family or household (a) while in the presence of [P.M.S.], or (b) under any other circumstances that would reasonably be expected to cause emotional

trauma to [P.M.S.]."[2] The court also rejected appellant's challenges to issuance of the OFP, explaining that under the Domestic Abuse Act (the act), Minn.Stat. §§ 518B.01–.02 (2010), it had the authority to issue an OFP in favor of a non-victim family member when another family member in the household was abused, and that it was not required to find either that P.M.S. witnessed the assault on his mother or that he was subjected to physical abuse himself. The court explained that it attempted to craft a remedy appropriate to the circumstances presented, stating: "A tender-aged child need not actually witness an assault against his mother that occurs in a home wherein the child is present, in order to be negatively affected by it."

## ISSUE

Did the district court abuse its discretion in issuing an OFP without finding that P.M.S., a member of appellant's family and household, was physically abused and that there is a present threat of harm to P.M.S.?

## ANALYSIS

▉ A decision on whether to grant an OFP is discretionary; the district court abuses that discretion "if its findings are unsupported by the record or if it misapplies the law." *Pechovnik v. Pechovnik,* 765 N.W.2d 94, 98 (Minn.App.2009). Upon further review, an appellate court "review[s] the record in the light most favorable to the district court's findings, and ... will reverse those findings only if ... left with the definite and firm conviction that a mistake has been made." *Id.* at 99 (quotation omitted).

*Statutory Requirements for Issuance of OFP*

▉ Appellant claims that the district court erred by issuing an OFP without allegations or evidence that P.M.S., in whose name the petition was offered, was physically abused and that there was present risk of physical harm to the child. This restricted view of the statute conflicts with its language.

In the governing statute, "domestic abuse" is defined to include "physical harm, bodily injury or assault," or "the infliction of fear of imminent physical harm, bodily injury or assault." Minn. Stat. § 518B.01, subd. 2(a)(1), (2). An act constituting domestic abuse must be "committed against a family or household member by a family or household member." *Id.,* subd. 2(a). When domestic abuse has occurred within a family or household, the process for obtaining an OFP is initiated by a petitioner's allegation of "the existence of domestic abuse." *Id.,* subd. 4(b). Such a petition "may be made by any family or household member personally or by a family or household member, a guardian ..., or, if the court finds that it is in the best interests of the minor, by a reputable adult age 25 or older on behalf of minor family or household members." *Id.,* subd. 4(a).

The conduct which occasioned the filing of the OFP petition in this case was committed by a family or household member, appellant, against Sarah Schmidt, a family or household member. *See id.,* subd. 2(a). This conduct met the definition of domestic abuse because it constituted assault and because the record included evidence to support an inference that appellant intended to inflict fear of imminent physical

2. This order addresses abuse of others in the household, narrowing the reference in the original order to abuse of "any person." This change makes a correction in the language of the original order that is necessary under the statute.

harm, bodily injury or assault on Sarah Schmidt. *Id.,* subd. 2(a)(1). The statute does not require that the family or household member on whose behalf the OFP petition is initiated must have suffered domestic abuse; rather, the statute requires only that domestic abuse occurred within the family or household and that the petitioner, a member of the household, allege "the existence of domestic abuse." *Id.,* subd. 4(b). Under this interpretation, Michael Schmidt, on behalf of his child, P.M.S., could initiate a petition for an OFP because P.M.S. alleged that domestic abuse had occurred within the family and household.

■ This interpretation of the act comports with the purpose of the statute, which is to protect victims of domestic abuse and to curtail harm. *Baker v. Baker,* 494 N.W.2d 282, 285 (Minn.1992). As a remedial statute, the act "receives liberal construction in favor of the injured party." *Pechovnik,* 765 N.W.2d at 98–99. Given the remedial purpose of the statute, we decline either to give it the restrictive interpretation promoted by appellant or, in effect, to graft limiting language in the statute that is contrary to its plain language. *See* Minn.Stat. § 645.08(1) (2010) (requiring statutory language to be construed in accordance with its "common and approved usage").

### *Permissible Range of Statutory Relief*

■ When domestic abuse occurs within a family or household, broad relief may be granted by the district court. Among the remedies allowed by statute, the district court may "restrain the abusing party from committing acts of domestic abuse." Minn.Stat. § 518B.01, subd. 6(a)(1). Further, the statute specifies that the district court may grant relief that includes "order[ing], in its discretion, other relief as it deems necessary for the protec-

tion of a family or household member." *Id.* at subd. 6(a)(13).

The district court ordered appellant not to commit acts of domestic abuse that could "adversely affect" P.M.S., including that he "not hit or strike any … member of his family or household" within P.M.S.'s presence or "under any other circumstances that would reasonably be expected to cause emotional trauma" to P.M.S. There is no abuse of discretion in the district court's decision to craft the OFP to grant this relief to P.M.S.

In addition to addressing various relief options directed at the abuser, *see id.* at subd. 6(a)(1)–(3), (7), (9)–(11), the statute also contemplates granting relief to children who live in abusive families or households, such as altering custody and parenting time, giving "primary consideration to the safety of the victim and the children." *Id.* at subd. 6(a)(4). The statute also addresses peripheral areas affecting children in abusive families or households, such as child support, counseling services, and use and possession of property. *Id.* at subd. 6(a)(5)–(8). Finally, the statute contains a general provision that authorizes the district court to order "other relief" that is "necessary" to protect "a family or household member." *Id.,* subd. 6(a)(13).

■ These statutory provisions show that the district court is not limited to granting protection only to a physically abused family or household member. In circumstances when one family member abuses another, and other family or household members may suffer harm by the actor's further misconduct, addressing that harm through court-ordered relief is also warranted under the broad language of the statute. Minnesota recognizes that children in family or household settings are subject to risk of abuse when they live in a home where domestic abuse is aimed at another. And "even when there has not

been physical abuse of the child, the child may suffer emotional distress in the presence of an abusive parent; and a child exposed to violence may perpetuate that behavior." *Beardsley v. Garcia*, 731 N.W.2d 843, 851 (Minn.App.2007) (holding that in OFP proceeding, district court had discretion to curtail parenting time to parent who abused other parent), *aff'd* 753 N.W.2d 735 (Minn.2008).

Having found that appellant abused P.M.S.'s mother in a domestic setting, the district court acted within its discretion by expanding relief as deemed necessary to protect others in the family, which in this case occurred when the court ordered appellant to refrain from either abusing P.M.S. or abusing others within P.M.S.'s presence. In so ruling, we are mindful of the directive that "judges considering actions brought under the [act] should consider the uniqueness of the remedies available under the statute, as well as the potentially devastating consequences if such relief is not granted." *Mechtel v. Mechtel*, 528 N.W.2d 916, 920 (Minn.App. 1995).

In sum, the act permits the district court to grant broad forms of relief to all members of the family or household when one person in the family or household has been abused by another member. Moreover, the necessity of the court's protection of P.M.S. is adequately demonstrated in the record. *See Pechovnik*, 765 N.W.2d at 100 (affirming OFP based on inference of intent to presently harm victim, based on totality of evidence and past abuse); *Boniek v. Boniek*, 443 N.W.2d 196, 198 (Minn. App.1989) (affirming OFP when present

intent to inflict fear of harm was inferred from totality of circumstances). The record permits the district court's finding that appellant has slapped his daughter, even when an adult, as a disciplinary choice, and also that by either witnessing the slapping or being in the house when it occurred, P.M.S., a vulnerable three-year-old who was dependent on his mother and who had been spanked by appellant, would be negatively affected—suggesting that this conduct was likely to place the child in imminent fear of harm. P.M.S. showed that he was at risk of harm by describing the incident to his father and paternal grandmother.

Appellant cites *Bjergum v. Bjergum* for the proposition that "[w]here the record fails to establish appellant's present intention to harm or inflict fear of harm, we have no alternative but to reverse the protection order." 392 N.W.2d 604, 606 (Minn.App.1986) (quotation omitted). In *Bjergum*, the OFP petition was based on a history of a husband's assaultive conduct to his wife, the last incident of which had occurred four years earlier. *Id. Bjergum* deals with the time of prior abuse, in circumstances unlike those in this case, and it is not authoritative on the question of which persons are affected by the abuse.[3]

Appellant also relies on *Chosa v. Tagliente*, 693 N.W.2d 487, 490 (Minn.App. 2005), in which this court held that the district court erred by issuing an OFP when the evidence was insufficient to support a finding of domestic abuse. There, a grandmother petitioned for an OFP on behalf of her 19–month–old grandchild.

---

**3.** Notably, although the *Bjergum* court ruled that the dated evidence of domestic abuse was insufficient to permit issuance of an OFP under the then-effective domestic abuse statute, it nevertheless affirmed the issuance of a protective order in favor of the wife and children, stating: "Since appellant voiced no objection during a court services report to being enjoined from causing respondent or his children physical harm, bodily injury, assault or infliction of imminent fear of these actions, the trial court is instructed to issue a protection order limited to this form of restraint." *Id.*

*Id.* at 488. This court rejected the grandmother's petition because it concluded that the mother's conduct constituted only neglect of the child, not abuse, stating: "The district court's findings—inappropriate hygiene and inadequate medical care of the child, leaving the child unattended, active chemical dependency while caring for the child, and an overall pattern of behavior endangering the physical well being of this child—may well evidence neglect, but they do not constitute domestic abuse." *Id.* at 490 (quotation omitted). Here, by contrast, the district court found that there was domestic abuse in the household, and the evidence supports that finding. As noted by the district court, while *Chosa* also involved an allegation of a domestic assault in the child's presence, the district court's findings and decision there were based on other evidence, and the court did not make findings on whether that particular alleged incident occurred.

*Evidentiary Issues*

■ Appellant also claims that the evidence and findings on the occurrence of abuse were insufficient to support the district court's decision. This court will sustain a district court's findings of fact unless they are clearly erroneous, Minn. R. Civ. P. 52.01, and credibility determinations are the "exclusive[ ] . . . province of the factfinder." *Gada v. Dedefo,* 684 N.W.2d 512, 514 (Minn.App.2004) (quotation omitted) (stating that in OFP proceedings, an appellate court may not alter a district court's credibility determinations, even when based on contradictory testimony, unless its findings are "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole").

Appellant claims that the district court erred by finding that he slapped Sarah Schmidt in April or May of 2010. He admits that the record provides general references to him slapping Sarah Schmidt, but he argues that the evidence does not provide the exact time of the abuse for purposes of showing that she was placed in harm or fear of harm of him while she lived in his house. Evidence provided by Michael Schmidt and the guardian supported a finding that appellant slapped Sarah Schmidt. According to Michael Schmidt, P.M.S. told him on May 8, 2010, that his mother and appellant had argued and that appellant had hit his mother. While P.M.S. did not provide an exact date on which the abuse occurred, the court could infer, based on P.M.S.'s age and reasoning ability, that he had reported the assault to his father soon after he became aware of it. Had the abuse occurred much earlier in P.M.S.'s life, he likely would not have been able to articulate what occurred. The guardian's testimony and report, viewed in a light favorable to the district court's decision, corroborate this testimony. The evidence was sufficient to support the district court's finding that appellant slapped Sarah Schmidt in the spring of 2010. *See Pechovnik,* 765 N.W.2d at 98–99.

## DECISION

Because the district court properly applied the Domestic Abuse Act in issuing the OFP in favor of P.M.S. and because the evidence supports the district court's findings, which in turn support its decision, we affirm.

**Affirmed.**