In the Matter of Michael S. SCHMIDT, on behalf of P.M.S., Respondent,

v.

Robert H. COONS, Appellant.

No. A10–1425.

Supreme Court of Minnesota.

Aug. 8, 2012.

Thomas F. Murtha IV, Murtha Law Office, Dickinson, ND, for respondent.

Michael J. Brandt, Brandt Criminal Defense, Anoka, MN, for appellant.

Elizabeth J. Richards, Beverly Balos, St. Paul, MN, Rana S. Alexander, Minneapolis, MN, Kristine Lizdas, Minneapolis, MN, for amici curiae Minnesota Coalition for Battered Women, Battered Women's Legal Advocacy Project, and Battered Women's Justice Project.

## OPINION

MEYER, Justice.

The issue in this case is whether an order for protection (OFP) may be issued under the Domestic Abuse Act, Minn.Stat. § 518B.01 (2010), on behalf of a minor child in the absence of a finding by the district court that the child is a victim of domestic abuse. The district court issued an OFP to respondent on behalf of his minor son against appellant, the child's grandfather and respondent's father-in-law, when the alleged victim of the domestic abuse did not seek or want protection against appellant. The court of appeals affirmed the district court. We believe the primary concern of the Domestic Abuse Act is and always has been to provide a remedy to victims of domestic abuse. When viewed in its entirety, the Act authorizes a district court to grant an OFP only to a victim of domestic abuse. As a result, the district court erred when it issued an OFP to respondent on his minor

son's behalf without finding that the son was a victim of appellant's domestic abuse. We reverse the court of appeals.

## I.

■ The fundamental principle of statutory construction is that courts construe legislative enactments in accordance with the intent of the Legislature. The plain meaning rule is stated in Minnesota Statutes § 645.16 (2010): "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." The challenge in this case is to understand whether the words of the statute are clear *in their application to the existing situation.* In other words, we must be able to say that the meaning of the statute is plain in the situation before the court. Therefore, before mentioning the statute and its provisions, we will first explain the facts and circumstances of the existing situation.

The material facts are not in dispute. Appellant Robert Coons is the grandfather of P.M.S., the minor son of respondent Michael Schmidt and his wife, S.S. (mother). Mother left Schmidt, sought shelter in the home of her parents, and filed for divorce from Schmidt. The relationship between mother and her estranged husband is reasonably characterized as hostile. There is evidence of domestic abuse between mother and Schmidt. The relationship between Coons and Schmidt is one of "animosity and tension."

Schmidt filed a petition for an OFP on behalf of P.M.S. against Coons. In the petition, Schmidt alleged that Coons had committed acts of domestic abuse against both mother and P.M.S. Schmidt requested, among other things, temporary physical custody of P.M.S. and an order enjoining Coons from committing abuse against or having contact with P.M.S. and Schmidt.

The district court ordered a hearing and appointed a guardian ad litem to investigate the case. After speaking with the child, who at the time was 3 years old, the child's daycare provider, and the responsible adults, the guardian ad litem concluded that the child has significant relationships with his grandparents and that the child had not been harmed by living with his mother in the home of his grandparents. Further, the guardian was concerned that the filing of an OFP by Schmidt may have been in retaliation for an OFP that mother filed in October 2009 against Schmidt "and/or an attempt on Mr. Schmidt's part to influence the outcome of the custody matter being addressed in the Schmidt[ ] divorce proceedings." The guardian ad litem was concerned that the OFP would jeopardize mother's ability to "get[ ] back on her feet" because she needed "the help and support of her parents."

At the hearing, Schmidt, Coons, mother, and the guardian testified. After the hearing, the only act of domestic abuse the district court found Coons had committed was an incident involving mother. The district court did not find that P.M.S. was a victim of domestic abuse. The district court granted the OFP. The OFP prohibited Coons from committing any acts of domestic abuse against P.M.S. or any acts of domestic abuse that would have the effect of harming P.M.S., including striking any person while in the presence of P.M.S.

In a published opinion, the court of appeals affirmed the district court.[1]

---

1. Coons filed an appeal of the district court's OFP, and then requested permission to bring a motion to reconsider in the district court. The district court denied the request and made minor changes to the language of the OFP that more closely tracked the language of Minn.Stat. § 518B.01. By then, however,

*Schmidt ex rel. P.M.S. v. Coons*, 795 N.W.2d 625, 631 (Minn.App.2011). The court of appeals ruled that the Domestic Abuse Act "does not require that the family or household member on whose behalf the OFP petition is initiated must have suffered domestic abuse." *Id.* at 629. The court concluded that the Domestic Abuse Act "requires only that domestic abuse occurred within the family or household" of the petitioner. *Id.*

Subsequently, Coons petitioned our court to review: (1) whether the district court abused its discretion by issuing an OFP without a finding of a present intent to harm P.M.S. or cause fear of harm in P.M.S.; and (2) whether the evidence was sufficient to find that Coons had a present intent to harm or cause fear of harm in mother. We granted review only on the first issue. Consequently, for purposes of this appeal, we assume that Coons committed domestic abuse against mother.

## II.

■ With the facts and circumstances of this case in mind, we turn to the question of whether Schmidt, who is not a victim [2] of domestic abuse and who is not petitioning on behalf of a victim of domestic abuse, may obtain the remedies of the Domestic Abuse Act in the form of an OFP against his father-in-law. Whether the Domestic Abuse Act allows an OFP to be issued to a nonvictim of domestic abuse is an issue of statutory interpretation that we review de novo. *Engquist v. Loyas*, 803 N.W.2d 400, 403 (Minn.2011).

Certain preliminary matters need to be addressed. First, domestic abuse under the Act is defined as "(1) physical harm, bodily injury, or assault; (2) the infliction of fear of imminent physical harm, bodily injury, or assault; or (3) terroristic threats ..., criminal sexual conduct ..., or interference with an emergency call," when that violence occurs between specific people. Minn.Stat. § 518B.01, subd. 2(a). To qualify as domestic abuse, the conduct must occur in a defined family or household unit—both the abuser and the victim must be members of the same family or household. *Id.,* subd. 2(b).

Before an OFP can be ordered, the Act requires that a petition be filed. *See* Minn.Stat. § 518B.01, subd. 4. The petition must, among other requirements, "allege the existence of domestic abuse" and include an affidavit "stating the specific facts and circumstances from which relief is sought." *Id.,* subd. 4(b). Also, the Act requires that the petition be filed by certain persons. *Id.,* subd. 4(a) (stating that a petition may be brought "by any family or household member personally" or by certain classes of people, including family or household members, "on behalf of a minor family or household member"). Although the Act discusses who may file a petition for an OFP, it does not expressly state what a district court must find in order to grant an OFP, nor does it address whether a court may grant an OFP only for victims of domestic abuse or whether nonvictims may also be granted an OFP.

Our court has already indicated in broad terms that the Act was designed to protect victims—"[It] was enacted in 1979 as one way to protect victims of domestic as-

---

the district court lacked authority to amend the language of the OFP. *See* Minn. R. Civ. App. P. 108.01, subd. 2 ("[T]he filing of a timely and proper appeal suspends the trial court's authority to make any order that affects the order or judgment appealed from."). Consequently, the district court's August 25,

2010, amended order is not before us, and we do not consider it.

2. In this opinion, we use the word "victim" to mean a person who has experienced a type of violence defined in Minn.Stat. § 518B.01, subd. 2(a), at the hands of a family or household member.

sault." *Baker v. Baker*, 494 N.W.2d 282, 285 (Minn.1992) (noting that the Act was "designed to curtail the harm one household member may be doing to the other"); *see also Burkstrand v. Burkstrand*, 632 N.W.2d 206, 209, 213 (Minn.2001) (explaining the purpose of the Act is "to provide speedy, effective relief to victims of domestic abuse" and that the Act "provides a process whereby domestic abuse victims may petition for protection and relief.... A victim files a petition and supporting affidavit"); *State v. Errington*, 310 N.W.2d 681, 682 (Minn.1981) (describing the Act as a "remedy for victims of abuse").

■■■ To determine whether the Legislature intended the OFP remedy to be available to domestic abuse victims only, the entire Domestic Abuse Act must be examined. "When interpreting statutes, we do not examine different provisions in isolation." *State v. Gaiovnik*, 794 N.W.2d 643, 647 (Minn.2011). A statute must be construed as a whole and the words and sentences therein "are to be understood ... in the light of their context." *Christensen v. Hennepin Transp. Co.*, 215 Minn. 394, 409, 10 N.W.2d 406, 415 (1943). When the Act is viewed as a whole, it is clear that an OFP is available only if the petitioner shows the respondent[3] committed domestic abuse against the petitioner or the person on whose behalf the petition is brought. As amici assert, "unless filing on behalf of a child who is abused, the language [of the Act] contemplates that the petitioner have a personal claim of abuse in order to meet the statutory language prerequisite of who may file a petition."

The language of the Act as a whole shows that the Legislature intended two parties to an OFP proceeding: the petitioner (a domestic abuse victim or a person bringing a petition on behalf of a domestic abuse victim)[4] and the respondent (the abusing party). The Act uses the phrases "both parties" or "either party" to indicate that there are two parties to an OFP proceeding. *See, e.g.,* Minn.Stat. § 518B.01, subds. 4(d), 5(e), 6(a)(8). For example, jurisdiction is proper in the county of "either party." Minn.Stat. § 518B.01, subd. 3. The Act also contemplates that one of the two parties is the domestic abuse victim or the person bringing a petition on behalf of the victim. For example, the court has the power to award temporary custody or establish parenting time "on a basis which gives primary consideration to the safety *of the victim* and the children." *Id.*, subd. 6(a)(4) (emphasis added). The use of the word "victim" shows that the abuse victim is one of the parties the Act contemplates.[5]

Furthermore, the procedures for seeking an OFP embody protections for abuse victims and are designed to accommodate the needs of victims. The Act allows a petitioner to keep her location confidential. *See* Minn.Stat. § 518B.01, subd. 3b. The court is required to assist a petitioner filing for an OFP. *See, e.g.,* Minn.Stat. § 518B.01, subds. 4(e) (requiring a court to "provide simplified forms and clerical assistance"), 4(f) (requiring a court to notify petitioners of the right to sue in forma pauperis). The Act also requires a court to advise a petitioner that she may seek

---

3. When we refer to "respondent" in this context, we mean the person against whom the OFP is brought and who is alleged to have committed domestic abuse, and not Schmidt, the respondent in this appeal.

4. In this case, the district court determined that the child, on whose behalf the petition

was brought, was not a victim of domestic abuse.

5. This provision also acknowledges that in a situation in which one parent abuses the other, the victim is the abused parent, not the children.

restitution. *Id.*, subd. 4(h). The procedures for seeking an OFP demonstrate that the Act contemplates a specific class of petitioners: domestic abuse victims who need such protections.

Subdivision 10 of the Act is also tailored to protect victims. It states that "[a] person's right to apply for relief shall not be affected by the person's leaving the residence or household to avoid abuse." Minn.Stat. § 518B.01, subd. 10. This statement assumes that there is abuse occurring to the person applying for relief.

Moreover, relief under the Act is clearly designed for victims because it is focused on the needs of victims. A court is allowed to exclude the abusing party from a shared residence with the petitioner or the place of employment of the petitioner. Minn. Stat. § 518B.01, subd. 6(a)(2), (9). Such relief is important to protect a victim of domestic abuse from her abuser. The court may also control the custody and parenting time of the parties. The Act instructs the court to consider the "safety of *the victim* and the children" and if their safety would be jeopardized, permits the court to "condition or restrict parenting time . . . or deny parenting time entirely." *Id.*, subd. 6(a)(4) (emphasis added). In fact, 12 out of the 15 separate subparts in the Act address the specific types of relief the court may award refer to the victim, the petitioner, the abusing party, or the parties. *See id.*, subd. 6(a)(1)–(4), (6)–(11), (14)–(15).

The victim-centered relief available under the Act makes little sense if applied to nonvictims. For example, a court could exclude an abuser from the residence, an area around the residence, or the workplace of a nonvictim. The court of appeals cited to provisions that provide for temporary support of a minor or spouse, the provision of counseling services, and the possession of the parties' property as support for its claim that "the district court is not limited to granting protection only to a physically abused family or household member." *Schmidt ex rel. P.M.S. v. Coons*, 795 N.W.2d 625, 629 (Minn.App. 2011). These protections, however, provide relief that is needed by a victim of domestic abuse. The incongruity of this relief demonstrates that it was only intended for victims of domestic abuse.

The Act addresses when an OFP may be extended. A court may extend the terms of an existing OFP upon a showing that "the petitioner is reasonably in fear of physical harm from the respondent." Minn.Stat. § 518B.01, subd. 6a(a)(2). This provision expressly allows for the extension of an OFP when a person is a victim of the respondent's domestic abuse. The clear focus in all of these provisions is on protecting a victim of domestic abuse.

Finally, only the respondent is entitled to notice under the Act. *See* Minn.Stat. § 518B.01, subd. 5. The Act does not provide for notice to the victim of domestic abuse before an OFP is issued. *See id.* This is a conspicuous absence, which strongly suggests an OFP can only be awarded to a victim of domestic abuse. If an OFP could be awarded to a nonvictim, it would be possible for an OFP proceeding to take place without the victim's knowledge and in a county far from her residence, yet still control her family and her abuser, and thus her life. Allowing courts to grant an OFP on behalf of a nonvictim undermines the autonomy of domestic abuse victims. As amici state, this interpretation "lead[s] to a contrary result which may harm the very persons the Act was intended to protect."

Under the dissent's interpretation of the Act, any household or family member could seek an order for protection on behalf of a minor. That means any blood relative, any person residing with the minor, or any person who has resided with

the minor in the past can petition on behalf of that minor. Minn.Stat. § 518B.01, subd. 2(b)(3), (4). For example, if a minor's uncle commits domestic abuse against the minor's aunt while the minor is visiting, but outside the minor's presence, then father's ex-girlfriend who used to live with the minor could petition the court for an OFP on behalf of the minor. Furthermore, under the dissent's interpretation, the court could restrain the uncle, although he never abused the minor, and although the aunt has not petitioned on her own behalf. This interpretation makes the statutory reach almost unlimited and is far more expansive than the overall statutory framework permits.

■■■ In the end, we believe the words of the Act are clear in their application to the facts of this case.[6] *See* Minn.Stat. § 645.16. When viewed in its entirety, the Act clearly contemplates two parties in an OFP proceeding, the victim and the abusing party. We hold that an OFP may be granted only to a victim of domestic abuse. The district court in this case issued an OFP brought by Schmidt on behalf of P.M.S. without finding that P.M.S. was the victim of an act of domestic abuse committed by Coons. Accordingly, the district

court erroneously awarded Schmidt's petition for an OFP on behalf of P.M.S. The OFP is vacated, and the court of appeals is reversed.

Reversed.

DIETZEN, Justice (dissenting).

This case presents the question of whether a district court has authority under the Domestic Abuse Act, Minn.Stat. § 518B.01 (2010), to grant an order for protection (OFP) it deems necessary to protect a child upon a finding that domestic abuse has been committed against an adult victim in the household. The majority concludes that even when a court finds that a custodial mother is being abused by another family member and the child is in need of protection, the court lacks authority under the statute to issue an OFP unless the child was also abused. The majority reasons that the exclusive purpose of the Domestic Abuse Act is to protect only victims of domestic abuse, and therefore the district court is without authority to issue an OFP to protect the child. I conclude that section 518B.01, subdivision 6, clearly provides that when a court finds that abuse has occurred in the household,

---

**6.** We note that an expansive reading of the Act, which allows district courts to issue OFPs on behalf of nonvictims, is not necessary to protect children. Other remedies are available to protect minors who reside with a victim of domestic abuse. For example, any reputable person may petition the juvenile court if that person has knowledge that a minor is in need of protection or services, which includes a minor who resides with a perpetrator of domestic abuse. Minn.Stat. §§ 260C.007, subd. 6; 260C.141 (2010). Upon such a petition and a determination of the best interests of the minor, a court may order various relief, including placing the child under the protective supervision of a social services agency, and may transfer legal custody of the minor to a social services agency. Minn.Stat. § 260C.201, subd. 1 (2010). Local welfare agencies are also permitted to

petition for child protection. Minn.Stat. § 260C.148, subd. 1 (2010). Additionally, a court may grant relief to minors in a family or household where domestic abuse occurs, pursuant to an OFP granted to the victim of the abuse. *See* Minn.Stat. § 518B.01, subd. 6(a)(13) (authorizing a district court to order "other relief as it deems necessary for the protection of a family or household member"). Thus, even if the Act allows petitions by and on behalf of victims only, minors in a family or household with a domestic abuse victim are still eligible for relief.

The expansive reading of the statute suggested by the dissent is not supported by the statutory framework of the Domestic Abuse Act. If there is to be an expansion of the reach of the protection of the Act, the Legislature is best equipped to consider the public policy implications that flow from such a decision.

the court may order "other relief as it deems necessary" for the protection of the child. Minn.Stat. § 518B.01, subd. 6(13). The majority's interpretation of the Domestic Abuse Act writes section 518B.01, subdivision 6, out of the statute, and is contrary to the clear intent of the Legislature. Consequently, I dissent.

To address the flaws in the majority's opinion, I will discuss the noncustodial father's right to bring a petition for an OFP under section 518B.01, the required hearing on the petition, and the authority of the court to order relief when domestic abuse is found to have occurred in the household.

## I.

The Domestic Abuse Act, Minn.Stat. § 518B.01, provides a comprehensive process by which specified persons may petition the courts for protection and relief from domestic abuse. The process is initiated when a petition for an OFP is filed by a person described in the statute. Minn. Stat. § 518B.01, subd. 4(a). The petition "shall allege the existence of domestic abuse," *id.*, subd. 4(b), which includes "physical harm, bodily injury, or assault; [or] the infliction of fear of imminent physical harm, bodily injury, or assault" that is "committed against a family or household member by a family or household member," *id.*, subd. 2(a).

A petition may be brought by "a family or household member ... on behalf of minor family or household members." Minn.Stat. § 518B.01, subd. 4(a). The child's father, Schmidt, satisfies the requirements of subdivision 4(a). *See id.*, subd. 2(b) (defining "parents and children" as "family or household members"). "A petition for relief shall allege the existence of domestic abuse, and shall be accompanied by an affidavit ... stating the specific facts and circumstances from which relief is sought." *Id.*, subd. 4(b).

Coons argues that Schmidt lacks standing under subdivision 4(a) to bring the petition. The majority does not address this argument.[1]

In my view, Schmidt's petition satisfied the requirements of subdivision 4(b) by alleging that Coons inflicted domestic abuse upon the child. The petition and accompanying affidavit allege that Schmidt "believe[s the child] is being abused by ... Bob Coons and ... is being exposed to Bob Coons abusing [the child]'s mother." The affidavit explains that Schmidt is "in fear that [the child]'s emotional and physical safety are in jeopardy." The petition and affidavit also describe the child's verbal report that Coons hit the child. The affidavit concludes:

> I believe that there is a past pattern of abuse by Bob Coons against his immediate family members. Based on [the

1. Indeed, the majority criticizes the dissent's interpretation of the Act as allowing "any blood relative, any person residing with the minor, or any person who has resided with the minor in the past" to petition on behalf of the minor. But that is nothing more than the language of the Act itself. *See* Minn.Stat. § 518B.01, subd. 4(a). Moreover, the majority never addresses how Schmidt falls outside of the classes of persons specifically authorized under section 518B.01, subdivision 4(a), to seek relief.

Additionally, the majority seems to assume that simply because a petition has been filed, a court will grant the requested relief. But who can petition for relief under section 518B.01, subdivision 4, is separate and distinct from whether the petition warrants relief under subdivision 6. Thus, whether the petition would be granted, and the relief that would be ordered if the petition were granted, are and should be *different questions*. The majority erroneously conflates standing to petition with whether the petition states a claim upon which relief can be granted and the appropriate relief to award if the petition is granted.

child]'s most recent comments to me, I believe that Bob Coons is physically and emotionally abusing [the child]. I believe that [the child]'s mother is also a victim of abuse by Bob Coons and because she is living in the same home that she is unable to prevent the abuse.

Schmidt sought a hearing and an OFP protecting the child from "any physical harm [or] fear of immediate physical harm" caused by Coons against the child.

Following the filing of a petition, a court "shall order a hearing" on the petition. Minn.Stat. § 518B.01, subd. 5(a). At the hearing in this case, the court-appointed guardian ad litem who investigated the allegations in Schmidt's petition testified that she "[couldn't] say that abuse did or did not occur," and that the child's statement to Schmidt that Coons had hit the child may have referred to an instance when Coons spanked the child.[2] The guardian testified that Coons admitted that he had slapped the child's mother in the face, and that Coons had explained that slapping the mother "was his form of discipline." She also testified that Coons had admitted to slapping the child's mother on other occasions.[3] The guardian admonished Coons that "[t]his has to stop. This can't happen again." The guardian testified that it was her understanding that the child had not witnessed the slap but that the child had possibly heard the argument leading up to it. The guardian expressed concern that it could be emotionally traumatizing for the child to witness Coons harming the child's mother.[4]

The district court found that "[a]cts of domestic abuse have occurred." Specifi-

cally, the court found that Coons slapped P.M.S.'s mother in the face during a heated argument while P.M.S. was in the house. The court could not determine whether P.M.S. witnessed the abuse, due in part to the fact that the guardian ad litem "made virtually no effort to find out if [P.M.S.] did in fact see anything." The court further found that Coons did not "currently pose[ ] a risk of physical harm to [P.M.S.]," but expressed concern that Coons would abuse P.M.S.'s mother again, either in P.M.S.'s presence or in some other fashion that would be traumatizing to P.M.S. Moreover, the court was concerned that Coons would "graduate" from disciplining P.M.S. by spanking to the use of inappropriate types of physical punishment, as Coons had done with P.M.S.'s mother. The court determined that the minor child P.M.S. was in need of protection from Coons's continued use of disciplinary tactics constituting domestic abuse.

## II.

Upon notice and hearing on the petition, the court "may provide relief" to a petitioner, including "restrain[ing] the abusing party from committing acts of domestic abuse" and "order[ing], in its discretion, other relief as it deems necessary for the protection of a family or household member." Minn.Stat. § 518B.01, subd. 6(a)(1), (13).

Subdivisions 4(b), 6(a)(1), and 6(a)(13) clearly and unambiguously provide that when a district court concludes that domestic abuse has occurred and a child is in need of protection, the court may "restrain the abusing party from committing acts of domestic abuse" against the child in the

---

2. Coons also testified to these facts during the OFP hearing.

3. When asked during the hearing about his prior abuse of the child's mother, Coons asserted his Fifth Amendment right not to testify.

4. The guardian testified that she had not asked the child about the allegations that Coons had hit the child or whether the child had witnessed Coons hitting the child's mother.

future, regardless of whether the petitioner has proven that the child has actually suffered domestic abuse at the hands of the abusing party. The use of the phrase "other relief" in subdivision 6(a)(13) and the object of that phrase—"for the protection of a family or household member"—evidence an unmistakable intent by the Legislature to protect *all* family and household members from domestic abuse.

The majority's interpretation of subdivision 6(a) excises subdivision 6(a)(13) from the statute. Essentially, the majority reads subdivision 6(a)(13) to limit the court's authority to provide "other relief as it deems necessary for the protection of a family or household member [that actually suffers domestic abuse by the abusing party]." But the statute contains no such limiting language, and the court exceeds its authority by adding words to the statute in this manner. *See Rohmiller v. Hart,* 811 N.W.2d 585, 590 (Minn.2012); *Genin v. 1996 Mercury Marquis,* 622 N.W.2d 114, 117 (Minn.2001).

The majority relies on the Legislature's use of the word "victim" in subdivision 6(a)(4) to conclude that the intent of the Domestic Abuse Act is to provide protection via an OFP *only* when petitioned by persons found by the court to have been direct victims of domestic abuse. The argument is flawed for at least two reasons. First, subdivision 6(a)(13) gives the court discretion to grant "other relief" it deems necessary to protect "a family or household member" from domestic abuse. Had the Legislature intended to limit the scope of the court's authority to victims of do-

mestic abuse, it would not have used the phrase "other relief." Second, subdivision 6(a)(4) explicitly instructs courts to consider "the safety of the victim *and the children*" in making an award of temporary custody or parenting time. (Emphasis added.) This phrase unequivocally demonstrates that the intent of the Domestic Abuse Act is to enable courts to protect "the children" from an abusing party even when the children are not, themselves, the direct victims of domestic abuse.

The majority is undoubtedly correct that the statute contemplates two parties to an OFP proceeding—but those parties are the *petitioner* (whom the statute does not define as a "victim") and the *respondent.* In short, nothing about the Legislature's use of the term "victim" in subdivision 6(a)(4) bars a court from protecting a child from future abuse, even though the child has not been personally abused in the past.

Put simply, there is *no* support for the majority's conclusion that the Legislature intended a court to be powerless to protect a minor child living in a household in which domestic abuse has already occurred, and who is at risk if the abuse continues or escalates. The majority's interpretation permits a person known to be committing domestic abuse to act with impunity, so long as the abuser does not directly abuse the child and the victim is unwilling or unable to seek protection for himself or herself. This renders a noncustodial parent unable to obtain protection quickly for his or her minor child when domestic abuse is being committed against the custodial parent,[5] as in this case. It also

---

**5.** The majority argues that permitting a district court to grant an OFP to a nonvictim child it deems in need of protection, as a result of domestic abuse committed against someone else, is "not necessary" to protect children. This argument misses the mark. First, the issue before the court is not whether at-risk children have other remedies available to protect them from domestic abuse. The

issue is whether the plain language of *this statute* makes *this relief*—namely, an OFP—available to protect such children. Second, the same argument can be made with respect to victims of domestic abuse. An OFP is only "one means" to protect victims from their abusers. *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 211 (Minn.2001); *see also Baker v. Baker,* 494 N.W.2d 282, 285 (Minn.1992)

renders the noncustodial parent unable to obtain protection quickly for his or her child when domestic abuse is being committed in the custodial parent's home against *another child* in the custodial parent's home who is not a "family or household member" of the noncustodial parent. In the latter circumstance, the majority leaves the district court powerless to order the cessation of the *known domestic abuse of a child* because the noncustodial parent lacks authority to petition on behalf of the other child and the persons with authority to file such a petition are unwilling or unable to do so. To suggest that this outcome is in any way consistent with the intent of the Domestic Abuse Act is, to say the least, seriously flawed.

I respectfully dissent.

PAGE, Justice (dissenting).

I join in the dissent of Justice Dietzen.

STRAS, Justice (dissenting).

I join in the dissent of Justice Dietzen.

(explaining that an OFP is a "band-aid" meant to provide relief limited in scope and duration "until a more permanent dispute resolution can be put in place"); *State v. Errington,* 310 N.W.2d 681, 682 (Minn.1981) (explaining that the Domestic Abuse Act is "an alternative to other available legal remedies"). In short, whether a victim or at-risk child may also seek other legal remedies in response to domestic abuse is completely irrelevant to the question of whether a court may issue an OFP.