*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0079**

In the Matter of: Stanislav Kopylov, petitioner,
Respondent,

vs.

Tatiana Kopylov,
Appellant.

**Filed August 31, 2015
Affirmed
Stauber, Judge**

Scott County District Court
File No. 70FA1421467

Stanislav Kopylov, Jordan, Minnesota (pro se respondent)

Alex Brusilovsky, Eden Prairie, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Stauber, Judge; and Smith, Judge.

# UNPUBLISHED OPINION

**STAUBER**, Judge

On appeal from the district court's grant of an order for protection (OFP), appellant asserts that the evidence is insufficient to support issuance of the OFP. We affirm.

# FACTS

Appellant Tatiana Valerievna Kopylov challenges a one-year OFP issued on December 15, 2014, that prohibits her from contacting, going to the home of, or committing acts of domestic abuse against her husband, respondent Stanislav Kopylov. Respondent brought appellant to the United States on a fiancé visa and married her on October 29, 2013. The parties separated in late June 2014 and are now in the process of dissolving their marriage. Respondent petitioned for an OFP in December 2014, alleging that appellant repeatedly "scratched me all over my body neck, arms, back, chest, legs" and that "[s]he came to my church on 11/30/2014" and he "felt threatened" and "had to leave." He also alleged that he was in immediate danger because "she's crazy, she's unstable."

The district court held an evidentiary hearing on the petition on December 15, 2014, and heard testimony from appellant, respondent, and respondent's family members, including his mother, brother, and sister. Respondent testified that from November 2013 to April 2014, appellant "scratched me up," "would rip my shirts off," "follow me wherever I would go," and "wouldn't let me sleep until three or four in the morning." He also offered a photograph of an Xbox she destroyed "out of anger," a photograph of a scar left from a scratch that he received from her in April 2014, and cellphone records showing that appellant contacted respondent's relatives numerous times to find his whereabouts and to ask about him.

Respondent further testified that on November 30, 2014, appellant came to his church, sat right next to him although there were other open seats, and stared at him.

2

According to respondent, appellant did not like going to that church because services were held in English, and she speaks only Russian. At first, respondent asked his brother to switch places with him, but then changed his mind and left the church because he feared appellant and felt that he was in danger of imminent harm. When the judge asked him why he was afraid, respondent said that he did not know what she was capable of doing. He also said that after he and appellant separated, he slept in a room with his brother and their dogs, and they sealed the door shut with a knife.

Respondent's mother, Elena Kopylov, testified that one night she heard "horrible screams" coming from the parties' bedroom, opened the door, and saw appellant jumping on respondent's back and scratching him. She also stated that appellant had "psychiatric breakdowns" and would not allow anyone in the household to sleep, and that they all feared her.

Respondent's brother, Mark Kopylov, testified that on weekends when he lived at the house he heard yelling at all hours of the night coming from appellant's and respondent's bedroom, saw appellant screaming and following respondent on one occasion, and observed scratches that respondent would show him after "every" encounter with appellant. He also stated that he feared appellant because she is "unstable" and unpredictable, and verified that he and respondent sealed their door with a knife after his brother began to sleep in his room. Mark Kopylov also testified that he was in church with respondent during the November 30 incident and that appellant left the church soon after respondent left, so that "it was obvious that she came to stalk [respondent] and not just because she wanted to be at church and worship."

Respondent's sister, Angelina Silko, a nurse who lived in a different household, testified that when she visited, "[q]uite often we would find [respondent] all scratched up, arms, neck, back. It had claw marks . . . four or five."

During her testimony, appellant described respondent as "unstable," physically abusive to her and her son, a former drug user, and said that any scratches on respondent were caused by their boxer puppies. She did admit to scratching respondent once when she was trying to extricate herself from his chokehold. She also admitted to taking respondent's Xbox remote control but denied breaking the Xbox, stating that she only wanted attention from her husband. Appellant also denied going to church on November 30 with the purpose of seeing respondent and testified that she merely sat next to him accidentally because the church was dark and crowded.

Following the evidentiary hearing, the district court issued the OFP, finding that respondent "clearly established that he was repeatedly attacked by appellant from approximately November 2013 through April 2014." The court also found that appellant "attacked" respondent "by jumping on his back and scratching him all over his body." The court specifically did not find appellant's testimony credible with regard to puppies being responsible for respondent's scratches or that appellant "just happened" to sit next to respondent at church. The district court found that respondent's fear of harm returned when appellant sat next to respondent in church on November 30.

Appellant argues that the evidence is not sufficient to support issuance of the OFP.

4

**D E C I S I O N**

A district court may issue an OFP under the Domestic Abuse Act, Minn. Stat. 518B.01-.02 (2014), when a family or household member commits domestic abuse against another family or household member. "Domestic abuse" is defined to include actual harm or "the infliction of fear of imminent physical harm, bodily injury, or assault." Minn. Stat.§ 518B.01, subd. 2(a)(2); *see Boniek v. Boniek*, 443 N.W.2d 196, 198 (Minn. App. 1989) (permitting issuance of OFP when a family or household member "manifests a present intention to inflict fear of imminent physical harm, bodily injury or assault"). "Present intent to inflict fear of imminent physical harm, bodily injury, or assault can be inferred from the totality of the circumstances . . . ." *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009). "Past abusive behavior, although not dispositive, is a factor in determining cause for protection." *Boniek*, 443 N.W.2d at 198.

The district court's decision to issue an OFP is discretionary. *Chosa ex rel. Chosa v. Tagliente*, 693 N.W.2d 487, 489 (Minn. App. 2005). We will reverse only for an abuse of discretion, *Braend v. Braend*, 721 N.W.2d 924, 926-27 (Minn. App. 2006), which may occur when an OFP is issued without evidentiary support. *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004). An OFP lacks evidentiary support when the findings of fact are clearly erroneous, contrary to the weight of the evidence, or not supported by the evidence as a whole. *Id*. As an appellate court, we will "neither reconcile conflicting evidence nor decide issues of witness credibility." *Id*.

Appellant argues that there was no evidence showing that she had present intent to inflict fear of imminent physical abuse on respondent, relying on *Kass v. Kass*, 355

5

N.W.2d 335 (Minn. App. 1984). In *Kass*, the petitioner and respondent had not had any contact for three years when the petitioner thought she saw the respondent driving a car behind her on the road. *Id*. at 336. This court reversed the OFP, ruling the evidence insufficient to show that the respondent intended to put the petitioner in fear of imminent physical harm when there was no "overt action" by the respondent showing such intent. *Id.* at 337; *see Bjergum v. Bjergum*, 392 N.W.2d 604, 606 (Minn. App. 1986) (requiring reversal of OFP when there is no showing of respondent's "*present* intention to do harm or inflict fear of harm" (emphasis added)).

This case is factually distinguishable from *Kass*, and giving due deference to the district court's findings and credibility determinations, we conclude that the totality of the circumstances shown by this record support the finding that appellant had present intent to place respondent in fear of imminent physical harm. In addition to a domestic abuse history that included appellant's repeated acts of bodily assault against respondent over the course of six months, some acts which may have stemmed from appellant's mental instability, appellant continued to attempt to influence and maintain contact with respondent even after they separated. The most recent incident at the church was therefore part of an ongoing pattern and occurred much closer in time to the prior domestic abuse than the conduct that occurred in *Kass*. The church incident occurred while the parties' marital dissolution was pending and not three years post-dissolution, which was the case in *Kass*. Also, the incident here involved close physical proximity between appellant and respondent, as well as appellant's staring at respondent. These

6

facts support the district court's inference that appellant had the present intent to cause respondent fear of imminent physical harm.

In *Boniek*, this court affirmed an OFP when the actions of the OFP respondent "went well beyond that exhibited in *Kass*," and where the evidence was found sufficient to permit an inference of present intent to inflict fear of imminent physical harm. 443 N.W.2d at 198. There, the former spouse cut apart the parties' marriage certificate and placed it on the front steps at the petitioner's home, assaulted an insurance salesperson who came to the petitioner's home, and admittedly drove around the petitioner's home on occasion. *Id*. The conduct at issue here is closer to the conduct in *Boniek* than in *Kass* and, on this record, the district court did not clearly err in finding that appellant had the intent necessary to support the issuance of an OFP.

**Affirmed.**