*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1097**

In re the Matter of:

Megan Nicole Arnold, petitioner,
Respondent,

vs.

John Wesley Arnold,
Appellant.

**Filed April 27, 2015
Affirmed
Reilly, Judge**

Anoka County District Court
File No. 02-FA-14-727

Jennifer R. Wellner, Wellner & Isaacson, PLLP, Circle Pines, Minnesota (for respondent)

Ryan L. Kaess, Kaess Law, LLC, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant argues that the district court abused its discretion by issuing an order for protection (OFP) on behalf of respondent. We affirm.

# FACTS

Appellant John Wesley Arnold (husband) and respondent Megan Nicole Arnold (wife) were married on July 28, 2012, and have one minor child. Husband and wife lived together from January 2012 through December 23, 2013, in the couple's home in Nisswa, Minnesota. This appeal arises from a dispute that occurred between the parties on December 21, 2013. During the course of the evening, husband was drinking beer in the garage and driving a snowmobile. Wife became concerned that husband was drinking and driving. She confronted him. The parties offered different versions of the events that occurred during this confrontation.

Wife testified that the argument escalated to the point that husband pressed his fingers against her head, "jabbing [her] temple as if it was a gun," and that it hurt. Wife was six months pregnant with the couple's child at the time and testified that she was experiencing cramping and spotting and went into the bedroom to lie down. Wife claims that husband threw a glass vase at her and that it hit the wall a "[c]ouple feet" away from her and shattered. Wife was not hit by the glass. Wife testified that she became afraid and attempted to call 911, but husband grabbed her hand as she was dialing, twisted her wrist, and took away her cell phone. Wife testified that husband returned to the living room with the cell phone, where he eventually passed out. Wife later went into the living room and stated that she saw a gold handgun near husband. Wife retrieved her cell phone but did not call 911 because she was afraid it would awaken her husband. Wife returned to the bedroom, pushed the dresser against the door, and exchanged numerous text messages with her mother, who arranged to pick her up when husband returned to work.

2

Husband disputes wife's account of the December 21 events. Husband denied that he pointed an imaginary gun at wife or threw a vase against the wall. He further denied that he twisted wife's wrist or took her phone away from her to prevent her from calling 911. Husband stated that he did not have a handgun and did not own any firearms or keep any firearms in the home.

Wife left the house on December 23 and moved into her mother's residence in Coon Rapids, where she resided at the time of the OFP hearing. Wife was on bed rest for her pregnancy through March and rarely left her mother's house. Husband and wife continued to exchange text messages throughout January and February. Wife testified that she continued to communicate with husband because she wanted to retrieve the rest of her possessions from the couple's home. By March 7, husband and wife stopped communicating.

The couple's child was born on March 28 via an emergency cesarean surgery. Wife was limited in her movement following the birth and could not sit or walk for long periods of time. Wife was not permitted to drive and relied on her mother for transportation. Wife only left the house to go to doctor's appointments for herself and her son. Wife and her mother formed a plan that if husband came to wife's mother's home, wife would lock herself into the bathroom and call 911.

Husband served divorce papers on wife on April 7. Approximately one week later, wife petitioned for an ex parte OFP against husband. In the affidavit accompanying the petition, wife alleged that husband's behavior "continued to escalate over the course of [the] relationship" and she feared for her life. The district court issued an emergency

3

ex parte OFP prohibiting husband from committing acts of domestic abuse against wife, having any contact with wife, or entering wife's residence. The district court held an evidentiary hearing and heard testimony from wife, wife's mother, and husband. On May 30, the district court issued a permanent OFP, finding that husband committed three acts of domestic abuse against wife on December 21. The district court temporarily awarded physical and legal custody of the minor child to wife until custody and parenting time could be addressed in the divorce proceedings. Husband appeals.

## D E C I S I O N

Husband challenges the district court's issuance of the OFP. "We review the district court's decision to grant an OFP for an abuse of discretion." *Ekman v. Miller*, 812 N.W.2d 892, 895 (Minn. App. 2012). A district court abuses its discretion when its findings are not supported by evidence in the record or when it misapplies the law. *Id*. We will review a district court's findings for clear error and will not reverse unless the findings are "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id*. (quotation omitted).

The Domestic Abuse Act permits a family member to petition for an OFP in cases of domestic abuse. Minn. Stat. § 518B.01, subd. 4(a) (2012). And the district court may grant an OFP to restrain a party "from committing acts of domestic abuse." *Id.*, subd. 6(a)(1) (2012). Domestic abuse is defined as any of the following acts committed against a family or household member: (1) physical harm, bodily injury, or assault; (2) the infliction of fear of imminent physical harm, bodily injury, or assault; or (3) terroristic threats, criminal sexual conduct, or interference with an emergency call. *Id*., subd. 2(a)

4

(2012). The use of the phrase "infliction of fear" in subdivision 2(a)(2) "implies that the legislature intended that there be some overt action to indicate that appellant intended to put respondent in fear of imminent physical harm." *Kass v. Kass*, 355 N.W.2d 335, 337 (Minn. App. 1984) (emphasis omitted). Thus, a domestic abuse finding requires either "a showing of present harm, or an intention on the part of appellant to do present harm." *Id*. The Domestic Abuse Act is remedial in nature and is intended to protect victims of domestic abuse from their abusers, rather than to punish abusers for their conduct. *Rew v. Bergstrom*, 845 N.W.2d 764, 791 (Minn. 2014).

Husband argues that the district court abused its discretion in awarding the OFP because wife was not presently being harmed. Husband is correct that domestic abuse requires either a showing of present harm or an intention on the part of the abuser to do present harm. *Bjergum v. Bjergum*, 392 N.W.2d 604, 606 (Minn. App. 1986). The district court may infer present intent to commit domestic abuse based on the totality of the circumstances. *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009) ("Present intent to inflict fear of imminent physical harm, bodily injury, or assault can be inferred from the totality of the circumstances, including a history of past abusive behavior."). While past abusive behavior is a factor in determining cause for relief, it is not dispositive. *Chosa ex rel. Chosa v. Tagliente*, 693 N.W.2d 487, 490 (Minn. App. 2005).

Here, the district court weighed the evidence and found that three separate incidents of domestic abuse occurred on December 21:

a) [Husband] formed his hand into the shape of a gun; put the tip of his fingers against [wife's] temple, jabbed her with his fingertips causing pain, and verbally made the sound of a gun going off while yelling at [wife] and calling her a "f-----g c--t." This act constitutes domestic abuse within the meaning of Minn. Stat. § 518B.01, Subd. 2(a)(l ) & (2).

b) [Husband] threw a vase at [wife], which hit the wall near her, and shattered. This act constitutes domestic abuse within the meaning of Minn. Stat. § 518.01, Subd. 2(a)(2).

c) [Wife] attempted to call 911 using her cell phone. [Husband] grabbed [wife's] hand; twisted her hand and took [her] cell phone from her. This act constitutes domestic abuse within the meaning of Minn. Stat. § 518B.01, Subd. 2(a)(l) & (3).

The district court determined that husband's acts on December 21 qualified as abusive conduct under each of the three definitions of domestic abuse under the Domestic Abuse Act. Minn. Stat. § 518B.01, subd. 2(a)(1)-(3). The district court relied on these three distinct subparts of the statutory definition of domestic abuse in issuing the OFP, and the evidentiary record supports the district court's findings.

Husband argues that several "intervening acts" occurred between the parties, belying wife's claim that she was afraid of husband. Specifically, husband notes that between December and April, he petitioned for divorce, the couple's child was born, and the couple continued to exchange text messages. Husband argues that these events suggest that wife was not in fear of appellant and, if she was in fear, her "fear [was] unreasonable." The district court was presented with conflicting testimony from husband and wife regarding the events that occurred on December 21. The district court found that "[wife's] testimony regarding the events that transpired on December 21, 2013 was

6

credible" and that her account was corroborated by text messages she exchanged with her mother at or around the same time the events occurred. We accord "great deference" to the district court's credibility determination, *Alam v. Chowdhury*, 764 N.W.2d 86, 89 (Minn. App. 2009), and on appeal we will not re-weigh the evidence or make additional credibility determinations, which are left to the sound discretion of the district court. *See Pechovnik*, 765 N.W.2d at 99 ("[W]e neither reconcile conflicting evidence nor decide issues of witness credibility, which are exclusively the province of the factfinder." (quotation omitted)).

Husband alternatively asserts that the evidence does not support issuance of an OFP because the alleged domestic abuse occurred in December, nearly four months prior to wife's ex parte petition. Husband relies on *Chosa* for the proposition that "[i]n order to establish domestic abuse, a party must show present harm or an intention on the part of the [alleged abuser] to do present harm." 693 N.W.2d at 489 (quotation omitted). We have previously recognized that a long passage of time between an instance of domestic abuse and a petition seeking statutory relief under the Domestic Abuse Act can weigh against issuance of an OFP. *See, e.g.*, *Bjergum*, 392 N.W.2d at 606 (determining OFP filed two years after abuse was not justified); *Kass*, 355 N.W.2d at 337-38 (determining OFP was not justified when petition was filed four years after domestic abuse incidents). On this record, however, we are not persuaded by husband's argument. While a two- or four-year gap between an incident of domestic abuse and filing a petition for relief is too long, there is no authority for husband's argument that a four-month span is too remote,

7

particularly given the fact that wife was on bed rest for her pregnancy and suffered complications with the delivery that limited her mobility.

The factual record contains sufficient evidence supporting the district court's finding that husband committed three acts of domestic abuse against wife on December 21. Given the broad discretion of the district court to weigh the evidence and make credibility determinations and the public policy considerations favoring remedial application of the Domestic Abuse Act, we conclude that the district court did not abuse its discretion in granting an OFP in favor of wife.

**Affirmed.**