**In the Matter of Conelious McCASKILL.**

No. C0–98–2088.

Supreme Court of Minnesota.

Dec. 23, 1999.

Allan R. Poncin, Minneapolis, for appellant.

Amy Klobuchar, Thomas Lavelle, Minneapolis, for respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

This appeal raises the question of whether discharge from civil commitment prior to the completion of appellate review renders an appeal moot. We conclude that this appeal is not moot because collateral consequences attach to a commitment as mentally ill due to the early intervention provisions of the Minnesota Commitment and Treatment Act, Minn.Stat. §§ 253B.064–066 (1998). We reverse and remand to the court of appeals for review of the appeal on the merits.

Conelious McCaskill, appellant, who has a history of psychiatric hospitalizations dating to 1975, was involuntarily admitted to the Hennepin County Medical Center Crisis Intervention Center on September 2, 1998 and was transferred to Abbott Northwestern Hospital ("Abbott") the next day pursuant to Minn.Stat. § 253B.05 (1998). Appellant's treating physician filed a petition for judicial commitment with the district court on September 8, 1998 as permitted by Minn.Stat. § 253B.07, subd. 2 (1998). Pursuant to Minn.Stat. § 253B.07, subd. 7 (1998), the district court held a preliminary hearing on September 11, 1998 and ordered that appellant be held at Abbott until the commitment hearing. Following the commitment hearing, pursuant to Minn.Stat. §§ 253B.09 (1998), the district court ordered appellant committed as a mentally ill person on September 22, 1998.

Appellant filed a notice of appeal to the court of appeals on November 13, 1998, claiming that his conduct did not create a "substantial likelihood of physical harm to self or others" as required by Minn.Stat. § 253B.02, subd. 13 (1998). On February 23, 1999, while the appeal was pending, appellant's case manager filed a 180–day report with the district court recommending that appellant's commitment terminate because he no longer satisfied the criteria for commitment. Pursuant to Minn.Stat. § 253B.12 (1999 Supp.), the district court dismissed the petition and discharged appellant by order filed March 8, 1999. The court of appeals then dismissed appellant's appeal as moot by order filed March 17, 1999. We granted review of the court of appeals' order.

The issue of whether appellant's discharge from commitment rendered his appeal moot is a legal issue which we review de novo. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Util. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

The doctrine of mootness requires that we decide only actual controversies and avoid advisory opinions. *See In re Schmidt,* 443 N.W.2d 824, 826 (Minn. 1989). An appeal is not moot, however, where the issue raised is capable of repetition yet evades review or where collateral consequences attach to the judgment. *See State ex rel. Doe v. Madonna,* 295 N.W.2d 356, 360–61 (Minn.1980). We first address whether the issue raised in this appeal is capable of repetition yet evades review.

■ An issue is capable of repetition yet evades review if it does not remain a live controversy until the completion of appellate review but due to its nature may reoccur. *See, e.g., Elzie v. Commissioner of Pub. Safety,* 298 N.W.2d 29, 32 (Minn. 1980) (reviewing on the merits a challenge to the notice and hearing procedures used to suspend plaintiffs' drivers' licenses though the suspensions had terminated; the plaintiffs could face suspension again); *Klaus v. Minnesota State Ethics Comm'n,* 309 Minn. 430, 433–34, 244 N.W.2d 672, 674–75 (1976) (addressing disclosure requirements for candidates for public office though the plaintiff lost his reelection campaign). A number of cases interpreting the Minnesota Commitment and Treatment Act have involved issues capable of repetition yet evading review. *See In re Blilie,* 494 N.W.2d 877, 880–81 (Minn. 1993); *In re Wolf,* 486 N.W.2d 421, 422 n. 1 (Minn.1992); *In re Schmidt,* 443 N.W.2d at 826; *In re Peterson,* 360 N.W.2d 333, 335 (Minn.1984); *In re D.M.C.,* 331 N.W.2d 236, 237 (Minn.1983); *Madonna,* 295 N.W.2d at 361. For example, in *Madonna* we concluded that a challenge to the constitutionality of the procedure for prehearing confinement of an allegedly mentally ill person was an issue capable of repetition yet evading review due to the short duration of the hold and the possibility of multiple confinements. *See* 295 N.W.2d at 361.

■ In contrast to *Madonna,* this appeal does not present a broader issue capable of repetition because the issue here is whether the evidence is sufficient to support the commitment order. In his appeal to the court of appeals, appellant argued that the evidence fails to demonstrate, as required by Minn.Stat. § 253B.02, subd. 13, that his behavior "pose[d] a substantial likelihood of physical harm to self or others."[1] Appellant has a history of mental illness and may again face commitment but remanding to the court of appeals for a resolution of the issue raised by appellant, the sufficiency of the evidence supporting his commitment, would not impact the rights of appellant or others in future commitment proceedings.[2] Rather, the issue presented to the court of appeals is unique to, and relates only to, this specific commitment.

■ We acknowledge that the structure of the Minnesota Commitment and Treatment Act, particularly the early discharge provision of section 253B.12 which allows discharge prior to the expiration of the initial six month commitment period, ensures that many commitments will terminate prior to the completion of appellate review. The narrow issue raised by appellant, however—the sufficiency of the evidence in this particular commitment—will not arise again. We therefore hold that the issue raised in this appeal is not capable of repetition yet evading review.

---

1. To commit a person as mentally ill pursuant to the Minnesota Commitment and Treatment Act, a court must find by clear and convincing evidence that the person is a "mentally ill * * * person" and "there is no suitable alternative to judicial commitment * * * ." Minn. Stat. § 253B.09, subd. 1 (1998). Minn.Stat. § 253B.02, subd. 13 defines a "mentally ill person" as:

> any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which is manifested by instances of grossly disturbed behavior or faulty perceptions and poses a

substantial likelihood of physical harm to self or others as demonstrated by:
> (1) a failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment; or
> (2) a recent attempt or threat to physically harm self or others.

Minn.Stat. § 253B.02, subd. 13(a) (1998).

2. Contrary to the assertion of appellant's counsel at oral argument, this appeal does not address the petitioner's burden of proof in a commitment proceeding; the statute requires clear and convincing evidence. *See* Minn. Stat. § 253B.09, subd. 1 (1998). The issue presented is whether clear and convincing evidence supported appellant's commitment.

The collateral consequences exception to the mootness doctrine, however, requires remand to the court of appeals. We agree with appellant that collateral consequences attach to his commitment as mentally ill due to the early intervention provisions of the Minnesota Commitment and Treatment Act. *See* Minn.Stat. § 253B.064–066 (1998).

▇ Where an appellant produces evidence that collateral consequences actually resulted from a judgment, the appeal is not moot. *See Madonna*, 295 N.W.2d at 360. Further, if "real and substantial" disabilities attach to a judgment, we do not require actual evidence of collateral consequences but presume such consequences will result. *Morrissey v. State*, 286 Minn. 14, 16, 174 N.W.2d 131, 133 (1970) (holding collateral consequences attach to criminal conviction because "the consequent disabilities flowing from the stigma of conviction remain"); *see also Sibron v. New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) ("The Court thus acknowledged the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences. The mere 'possibility' that this will be the case is enough to preserve a criminal case from ending 'ignominiously in the limbo of mootness.' ") (citation omitted). A party may rebut this presumption of collateral consequences only by showing "there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged [judgment]." *See Sibron*, 392 U.S. at 57, 88 S.Ct. 1889.

In *Madonna* we noted, "some courts will presume that collateral consequences exist where commitment has occurred." [3] 295 N.W.2d at 360. We held in *Madonna* that an appellant must provide actual evidence of the collateral consequences of prehearing confinement but did not reach the issue of collateral consequences resulting from a civil commitment. *See id.*

Today we examine the collateral consequences of a civil commitment related to the early intervention provisions of the Minnesota Commitment and Treatment Act. The early intervention provisions allow a court to order involuntary treatment of a mentally ill person that is more limited in duration than a commitment. Upon a petition by the appropriate county agency, a court must order early intervention for a mentally ill person who meets certain criteria. *See* Minn.Stat. §§ 253B.02, subd. 5; 253B.064, subd. 1; 253B.065, subd. 5 (1998). The early intervention order "may include * * * a variety of treatment alternatives including, but not limited to, day treatment, medication compliance monitoring, and short-term hospitalization not to exceed ten days." Minn.Stat. § 253B.066, subd. 1 (1998). The order may not exceed 90 days. *See* Minn.Stat. § 253B.066, subd. 3 (1998).

**3.** Many state and federal courts have presumed that collateral consequences burden a person who has been committed. *See In re Ballay*, 482 F.2d 648, 651 (D.C.Cir.1973); *Justin v. Jacobs*, 449 F.2d 1017, 1019 (D.C.Cir.1971) (stressing consequences of commitment including state statute denying right to vote, federal statute denying right to serve on jury, special driver's license examination for the mentally ill, and limits on access to a gun license); *In re Morris*, 482 A.2d 369, 371–72 (D.C.App.1984) (concluding emergency confinement had continuing collateral consequences); *In re Hatley*, 291 N.C. 693, 231 S.E.2d 633, 634–35 (1977) (holding appeal of commitment justiciable based on collateral consequences); *McDuffie v. Berzzarins*, 43 Ohio St.2d 23, 330 N.E.2d 667, 669 (1975) (holding commitment issue not moot due to collateral consequences); *In re D.B.W.*, 616 P.2d 1149, 1151 (Okla.1980) (concluding collateral consequences of commitment include "legal disabilities and social stigmatization"); *Commonwealth ex rel. Finken v. Roop*, 234 Pa.Super. 155, 339 A.2d 764, 767–68 n. 4 (1975) (explaining "collateral consequences and stigma of being adjudged mentally ill remain to plague appellant throughout his life"); *State v. Lodge*, 608 S.W.2d 910, 911 (Tex.1980) (holding appeal not moot due to statute contemplating review and collateral consequences of commitment); *In re Giles*, 657 P.2d 285, 287 (Utah 1982) (concluding that analysis of collateral consequences of criminal convictions applies to civil commitments).

Specifically, a court must order early intervention if the court finds by clear and convincing evidence that the proposed patient 1) is mentally ill,[4] 2) refuses to accept appropriate treatment and:

> (3) the proposed patient's mental illness is manifested by instances of grossly disturbed behavior or faulty perceptions and either:
>> (i) the grossly disturbed behavior or faulty perceptions significantly interfere with the proposed patient's ability to care for self and the proposed patient, when competent, would have chosen substantially similar treatment under the same circumstances; or
>> *(ii) due to the mental illness, the proposed patient received court-ordered inpatient treatment under section 253B.09 at least two times in the previous three years; the patient is exhibiting symptoms or behavior substantially similar to those that precipitated one or more of the court-ordered treatments; and the patient is reasonably expected to physically or mentally deteriorate to the point of meeting the criteria for commitment under section 253B.09 unless treated.*

Minn.Stat. § 253B.065, subd. 5 (1998) (emphasis added). For a court to order early intervention, a proposed patient must meet three criteria but the statute provides two methods of satisfying the third criterion. The requirements set forth in Minn.Stat. § 253B.065, subd. 5(3)(ii), quoted above in italicized print, function as an alternative to a showing pursuant to Minn.Stat. § 253B.065, subd. 5(3)(i) that "grossly disturbed behavior or faulty perceptions significantly interfere with the proposed patient's ability to care for self" and that the proposed patient would have chosen similar treatment.

If a petition for early intervention relating to appellant is filed within three years of his commitment, the court will consider this commitment in determining whether early intervention is warranted. We recognize the possibility that within three years of this commitment appellant may face a second commitment and thus increased risk of early intervention. Further, appellant's history of hospitalizations dating to 1975 suggests that the possibility of a petition for early intervention is not remote.

Significantly, in ordering early intervention a court may rely on a commitment from which a proposed patient was unable to obtain review to support further involuntary treatment. A court may also compare a proposed patient's current symptoms or behavior with that precipitating his or her prior commitment though the sufficiency of the evidence supporting the prior commitment has never been reviewed. In this respect, appellant's inability to have the specific facts leading to this commitment reviewed could affect the outcome of a subsequent early intervention proceeding.

Further, the statutory structure makes it likely that many patients will be discharged prior to receiving appellate review of a commitment. Minnesota Statutes § 253B.09 provides that an initial commitment order may not exceed six months, and Minn.Stat. § 253B.12 provides for early discharge of a patient "not in need of further institutional care * * *." This structure could often result in multiple short-term commitments within a three year period, as patients stabilize in treatment and are discharged but later suffer increased symptoms. Appellant's circumstances are likely not unique. Our decision will affect not only appellant but also

---

4. Chapter 253B defines "mental illness" by cross reference to Minn.Stat. § 245.462 (1998). *See* Minn.Stat. § 253B.02, subd. 12a (1998). Minnesota Statutes § 245.462 states, " 'Mental illness' means an organic disorder of the brain or a clinically significant disorder of thought, mood, perception, orientation, memory, or behavior * * * that seriously limits a person's capacity to function in primary aspects of daily living such as personal relations, living arrangements, work, and recreation." Minn.Stat. § 245.462, subd. 20 (1998).

the rights of numerous other individuals committed as mentally ill who are discharged too quickly to obtain appellate review of the commitment and who may be subjected in the future to early intervention. We are troubled by the burden a holding of mootness would impose on these individuals. Moreover, this larger question of access to review is of statewide significance.[5]

Due to the seriousness of the potential consequences created by the early intervention provisions, we conclude that collateral consequences attach to appellant's commitment.[6] We note that the early intervention provisions apply only to commitments of mentally ill persons under Minn.Stat. § 253B.09 and do not address the collateral consequences of other civil commitments.[7]

Thus, we hold that due to the early intervention provisions of the Minnesota Commitment and Treatment Act collateral consequences attach to appellant's commitment as mentally ill and his appeal from that commitment therefore is not moot.

Reversed and remanded to the court of appeals for review on the merits.

---

6. The Minnesota Commitment and Treatment Act contains a provision that provides some protection from adverse consequences of a commitment. It states:

> Except as otherwise provided in this chapter and in sections 246.15, 246.16 [regarding custody of money belonging to inmates of state institutions and unclaimed money and property of such inmates], and 609.165 [regarding certain restrictions on the legal rights of individuals convicted of specific crimes], no person by reason of commitment or treatment pursuant to this chapter shall be deprived of any legal right, including but not limited to the right to dispose of property, sue and be sued, execute instruments, make purchases, enter into contrac-

tual relationships, vote, and hold a driver's license. Commitment or treatment of any patient pursuant to this chapter is not a judicial determination of legal incompetency except to the extent provided in section 253B.03, subdivision 6 [regarding consent to medical treatment].

Minn.Stat. § 253B.23, subd. 2 (1999 Supp.). This provision does not alter our interpretation of the early intervention provisions due to the prefatory language "except as otherwise provided in this chapter."

7. Chapter 253B sets forth procedures for committing persons who are mentally ill, mentally retarded, chemically dependent, mentally ill and dangerous to the public, or sexually dangerous, and persons with sexually psychopathic personalities. *See* Minn.Stat. §§ 253B.09; 253B.18; 253B.185 (1999 Supp.).