**In the Matter of Laurien PECHOVNIK, petitioner, Respondent,**

v.

**Scott Anthony PECHOVNIK, Appellant.**

**No. A08–1046.**

Court of Appeals of Minnesota.

May 5, 2009.

Christy Snow–Kaster, Constance S. Baillie, Central Minnesota Legal Services, Minneapolis, MN, for respondent.

Christopher E. Brevik, Brevik & Associates, Anoka, MN, for appellant.

Considered and decided by STAUBER, Presiding Judge; JOHNSON, Judge; and LARKIN, Judge.

## OPINION

LARKIN, Judge.

Appellant claims that the district court abused its discretion by issuing an order for protection against him, arguing that the district court's findings are unsupported by the record. Respondent contends that appellant's claim is moot because the underlying order for protection had expired by the time this court heard oral arguments. Because collateral consequences attach to an order for protection under statute, appellant's claim is not moot. And because the district court did not abuse its discretion by issuing the order for protection, we affirm.

## FACTS

In December 2007, respondent Laurien Pechovnik petitioned for an order for protection (OFP) on behalf of herself and her four children against her husband, appellant Scott Anthony Pechovnik. The district court held a hearing on the petition on December 20, 2007.

Respondent testified regarding several incidents of physical harm by appellant. Respondent testified that appellant grabbed insulation and shoved it into respondent's chest. Respondent's sister testified that she witnessed this incident. Respondent also testified that appellant tried to pull one of the parties' children from respondent's arms and threatened to kill respondent. Appellant admitted that he was arrested for this incident and pleaded guilty to disorderly conduct. Finally, respondent testified that appellant twice struck her in the face and gave her a bloody nose. All of these incidents were over ten years old.

Respondent also testified about more recent events. Respondent testified that in November 2007, appellant woke respondent by "slapp[ing]" respondent's feet and yelling at her. This incident caused respondent to flee the parties' residence to her sister's home. Respondent's sister testified that respondent was hysterical following the incident. Respondent also testified that she had recently fled the parties' residence, concerned for her safety, after appellant questioned her about a meeting that she had scheduled with her supervisor.

Respondent testified that in the 30 days preceding the hearing, appellant screamed at her, called her names, tracked her down, and pinned her in corners. Respondent testified that appellant cannot control his behavior, was losing control with greater frequency, and was causing respondent to flee the parties' residence. Respondent's sister testified that she witnessed altercations between the parties and witnessed respondent's demeanor after she had fled the parties' residence. Respondent's sister described respondent as "hysterical," "frightful," and "shaking" after these incidents. Respondent testified that she was unable to flee on some occasions because appellant prevented her from leaving. Respondent testified that appellant prevents her from leaving the parties' residence by hiding keys, standing by the door, and locking the door. Respondent testified that she fears being physically harmed by appellant. Respondent's sister

testified that she fears for respondent's safety.

Appellant also testified. Appellant denied abusing or physically harming respondent, striking respondent, causing harm to respondent when he "tapped" her feet, preventing respondent from leaving their residence, and intimidating respondent. Appellant characterized the insulation incident as one in which he "poked" insulation into respondent's lap and asserted that he attempted to pull the parties' child from respondent's arms because she had pulled the child out of his arms. Appellant admitted to arguing with respondent about her meeting with her supervisor, but stated that they had not argued often in the six months preceding the hearing. Appellant also testified that since respondent filed her petition, there were numerous situations in which he spoke to or was near respondent without incident.

The district court granted respondent's petition for an OFP at the hearing, restricting appellant's contact with respondent for six months. On the record, the district court found that respondent is in fear of imminent bodily harm. The district court concluded that "[t]he reasonableness of [respondent's fear] is a close call, from an objective sort of third-party view" but "[t]he [respondent] and her sister have convinced me that she is in fear of bodily harm" and there was enough credible testimony to find respondent's fear is reasonable. The district court further concluded, "Within the last 90 days, the [appellant], by words and actions, has placed [respondent] in fear of immediate bodily harm by gestures, persistent questioning, aggressive conversation and controlling behavior [that] when coupled [with] an old history of threatening behavior constitutes domestic abuse." The district court denied respondent's request for relief on behalf of her children.

Appellant appealed, and this court heard arguments in March 2009.

## ISSUES

I. Is this appeal moot?

II. Did the district court abuse its discretion by granting respondent's petition for an OFP against appellant?

## ANALYSIS

### I.

Respondent argues that this appeal is moot because by the time this court heard arguments, the underlying OFP had expired. Respondent therefore contends that this court is unable to grant effective relief.

Appellate courts "decide only actual controversies and avoid advisory opinions." *In re McCaskill,* 603 N.W.2d 326, 327 (Minn.1999). A case is moot if there is no justiciable controversy for a court to decide. *Kahn v. Griffin,* 701 N.W.2d 815, 821 (Minn.2005). A justiciable controversy "allows for specific relief by a decree or judgment of a specific character as distinguished from an advisory opinion predicated on hypothetical facts." *State ex rel. Sviggum v. Hanson,* 732 N.W.2d 312, 321 (Minn.App.2007) (citation omitted). When there is "no injury that a court can redress, the case must be dismissed for lack of justiciability," except in certain "narrowly-defined circumstances." *Id.*

There are two exceptions to the mootness doctrine: (1) if an issue is capable of repetition yet evading review and (2) if collateral consequences may attach to the otherwise moot ruling. *McCaskill,* 603 N.W.2d at 327. Where real and substantial limitations will arise from a judgment, courts do not require actual evidence of such limitations and instead, presume that

collateral consequences will attach. *See, e.g., id.* at 329–31 (holding that discharge from civil commitment before completion of appeal does not render appeal moot because of a civil commitment's collateral consequences); *Morrissey v. State,* 286 Minn. 14, 16, 174 N.W.2d 131, 133 (1970) (holding that collateral consequences attach to a criminal conviction because of the "the stigma of conviction"). "A party may rebut this presumption of collateral consequences only by showing 'there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged [judgment].'" *McCaskill,* 603 N.W.2d at 329 (quoting *Sibron v. New York,* 392 U.S. 40, 57, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968)).

■ Appellant argues that an OFP yields collateral consequences in a proceeding for (1) an extended or subsequent OFP, (2) marital dissolution, and (3) a custody determination. We agree.

First, an OFP yields collateral consequences related to the extension of the OFP and the issuance of a subsequent OFP. A petition for an initial OFP "shall allege the existence of domestic abuse." Minn.Stat. § 518B.01, subd. 4(b) (2008); *id.,* subd. 2(a) (defining domestic abuse as "(1) physical harm, bodily injury, or assault; (2) the infliction of fear of imminent physical harm, bodily injury, or assault; or (3) terroristic threats . . .; criminal sexual conduct . . .; or interference with an emergency call"). But a petitioner need not allege or show "domestic abuse" in order to extend the relief granted in an existing OFP or to obtain a new OFP if petitioner's OFP is no longer in effect when an application for subsequent relief is made. *Id.,* subd. 6a (listing four possible grounds for an extended or subsequent OFP); *see Braend ex rel. Minor Children v. Braend,* 721 N.W.2d 924, 927 (Minn.App.2006) (distinguishing the standard required to issue an initial OFP from the standard for issuing an extended or subsequent OFP and noting that it is enough to show that the petitioner was reasonably in fear of physical harm to obtain an extended or subsequent OFP).

Second, an OFP may yield collateral consequences in marital-dissolution proceedings. When an OFP is granted and "a proceeding for dissolution of marriage or legal separation is pending between the parties," the district court must provide a copy of the OFP to the court with jurisdiction over the dissolution or separation proceeding for inclusion in its file. Minn.Stat. § 518B.01, subd. 6(e). Finally, an OFP yields collateral consequences in future custody disputes between the parties. "In a subsequent custody proceeding the [district] court must consider a finding in a proceeding under this chapter or under a similar law of another state that domestic abuse has occurred between the parties." Minn.Stat. § 518B.01, subd. 17; *see also* Minn.Stat. § 518.17, subd. 1(a)(12) (2008) (stating that custody determinations are based on the best interests of the child and one best-interest factor is "the effect on the child of the actions of an abuser, if related to domestic abuse . . . that has occurred between the parents").

■ Because of the collateral consequences that attach to an OFP, we conclude that this appeal is not moot.

## II.

■ "The decision to grant an OFP under the Minnesota Domestic Abuse Act, Minn.Stat. § 518B.01 . . . is within the district court's discretion." *Braend,* 721 N.W.2d at 926 (citation omitted). "A district court abuses its discretion if its findings are unsupported by the record or if it misapplies the law." *Id.* at 927. "As a remedial statute, the Domestic Abuse Act receives liberal construction" in favor of

the injured party. *Swenson v. Swenson,* 490 N.W.2d 668, 670 (Minn.App.1992).

An OFP is justified if a person manifests a present intention to inflict fear of imminent physical harm, bodily injury, or assault on the person's spouse. *See Boniek v. Boniek,* 443 N.W.2d 196, 198 (Minn.App.1989) (citing Minn.Stat. § 518B.01, subd. 2 (1988)). Present intent to inflict fear of imminent physical harm, bodily injury, or assault can be inferred from the totality of the circumstances, including a history of past abusive behavior. *Id.* An overt physical act is not necessary to support the issuance of an OFP. *Hall v. Hall,* 408 N.W.2d 626, 629 (Minn.App.1987) (concluding that depending on the words and circumstances, a verbal threat can inflict fear of imminent physical harm, bodily injury, or assault), *review denied* (Minn. Aug. 19, 1987).

This district court based its issuance of the OFP on its finding that "[w]ithin the last 90 days, the [appellant], by words and actions, has placed [respondent] in fear of immediate bodily harm by gestures, persistent questioning, aggressive conversation and controlling behavior [that] when coupled [with] an old history of threatening behavior constitutes domestic abuse." The district court also found that "[respondent] is in fear of bodily harm—imminent bodily harm;" "[respondent] and her sister have convinced [the district court] that she is in fear of bodily harm"; and appellant manipulates respondent.

Appellant contends that the district court abused its discretion by granting an OFP because the record contains no evidence of domestic abuse. Specifically, appellant claims that there was no evidence to support a finding that appellant presently intended to inflict fear of imminent physical harm, bodily injury, or assault on respondent. *See* Minn.Stat. § 518B.01, subd. 2(a)(2) (2006) (defining domestic abuse as "the infliction of fear of imminent physical harm, bodily injury, or assault").

The district court acknowledged that its decision to grant an OFP in this case was a close call. We agree. The testimony was conflicting, and appellant articulated a basis to conclude that respondent was a biased witness. But in our review of an OFP, "[w]e review the record in the light most favorable to the district court's findings, and we will reverse those findings only if we are 'left with the definite and firm conviction that a mistake has been made.'" *Braend,* 721 N.W.2d at 927 (quoting Chosa ex rel. *Chosa v. Tagliente,* 693 N.W.2d 487, 489 (Minn.App.2005)). "We will not reverse merely because we view the evidence differently." *Gada v. Dedefo,* 684 N.W.2d 512, 514 (Minn.App. 2004). And "[w]e neither reconcile conflicting evidence nor decide issues of witness credibility, which are exclusively the province of the factfinder." *Id.* The district court's findings implicitly indicate that the district court found respondent's testimony credible. We defer to this credibility determination.

Respondent's testimony supports the district court's finding that appellant recently acted aggressively towards respondent. Respondent testified that appellant recently woke respondent up in the middle of the night by slapping her on her feet and then yelled at her; questioned respondent regarding an appointment with her employer to the point where respondent fled the parties' residence, fearing for her safety; screamed at respondent; pinned respondent in corners; and called respondent names. Although "gestures, persistent questioning, aggressive conversation and controlling behavior" may not show present intent to inflict fear of imminent physical harm in their own right, the district court also found that there was a

"history of threatening behavior." This finding is supported by the testimony of respondent and her sister that described several incidents from which the district court could find a "history of threatening behavior," not the least of which was the incident that resulted in appellant's conviction of disorderly conduct.

Under the deferential standard used to review the issuance of an OFP, we conclude that the district court did not abuse its discretion by issuing an OFP. The evidence was sufficient for the district court to infer appellant's present intent to inflict fear of imminent physical harm, bodily injury or assault based on the totality of the circumstances, including appellant's history of abusive behavior. *See Boniek*, 443 N.W.2d at 198 (viewing evidence in its totality and concluding that appellant exhibited behavior allowing inference that he intended to instill fear of physical abuse in his ex-wife).

## DECISION

Because collateral consequences attach to an order for protection, this appeal is not moot, despite expiration of the underlying order for protection. The district court's findings are supported by the record, and the district court properly applied the law. Thus, the district court did not abuse its discretion by granting respondent's petition for an order for protection. We affirm.

**Affirmed.**