*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0231**

In the Matter of:
Danielle Ann Schanze, petitioner,
Respondent,

vs.

Daniel Frederick Schanze,
Appellant

**Filed December 14, 2015
Affirmed; motions denied
Worke, Judge**

Dakota County District Court
File No. 19AV-FA-15-121

Jennifer M. Macaulay, St. Paul, Minnesota (for respondent)

Mark A. Olson, Burnsville, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Worke, Judge; and
Kalitowski, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant-father challenges the district court's issuance of an order for protection

(OFP), arguing that  (1) the district court's findings do not support the OFP, (2) the

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

evidence does not support the OFP, (3) his due-process rights were violated when the proceeding exceeded the scope of the petition, (4) the district court abused its discretion by not allowing evidence of statements respondent-mother made in marriage counseling, and (5) the district court failed to consider the child's best interests when deciding custody. We affirm.

**FACTS**

On July 4, 2014, appellant Daniel Frederick Schanze and respondent Danielle Ann Schanze were married. The parties' son was born later that year. On January 12, 2015, Danielle was served with Daniel's divorce petition. Two days later, Danielle filed a petition for an OFP against Daniel on behalf of herself and the parties' son.

Danielle asserted that she was in immediate danger because Daniel behaved erratically, made suicidal remarks, and owns guns. Danielle claimed that on one occasion, Daniel grabbed her arm to prevent her from walking away. She claimed that on November 9, 2014, Daniel threatened to kill her and any man he found with her. Danielle claimed that on December 25, 2014, Daniel shoved her while she was holding the parties' child.

The district court held a three-day hearing. Danielle testified that during an argument in September 2014, she tried to walk away, but Daniel grabbed her arm, swung her around, and pointed his finger in her face. She also testified that on December 25, 2014, she was sitting in a chair holding the parties' son when Daniel shoved her. Danielle claimed that throughout the marriage, Daniel threatened to kill her if she were ever with another man. Danielle filed the petition for the OFP because Daniel took all of

2

their money, and she was unaware of what he did with his guns. Danielle feared that Daniel would come to the house and kill her.

Danielle's father, Daniel Oldenburg, testified that in July 2014, he witnessed Daniel get mad when he believed that another man "had eyes for Danielle." Daniel said that if he ever caught Danielle with the man he would kill them. Oldenburg heard Daniel say something similar in November 2014.

Nancy Wilson, a licensed psychologist, testified that she began providing therapy to Daniel in September 2014. Wilson had no concerns about Daniel being a danger to himself or others. Wilson also met with Danielle for marriage counseling. Danielle's attorney objected to Wilson testifying about statements Danielle made in counseling because Danielle did not waive privilege. The district court agreed and determined that any testimony regarding Danielle's mental state was not necessary.

Daniel testified that he did not commit any of the acts alleged in Danielle's petition. He stated that he removed all of his guns from the home and that his father has exclusive control over the guns.

On January 27, 2015, the district court issued an OFP. The district court found that acts of domestic harm occurred, including: "[t]hreats of harm to [Danielle] and others with purpose to cause grave fear in [Danielle]." However, the district court found that Danielle failed to prove physical harm or domestic abuse relating to the child. The district court granted Danielle temporary sole legal and physical custody of the child until the issue was determined in the family-law proceeding. Daniel was granted unsupervised parenting time. This appeal follows.

## D E C I S I O N

### Findings of fact

Daniel argues that the district court's findings do not support the OFP. "The decision to grant an OFP under the Minnesota Domestic Abuse Act, Minn. Stat. § 518B.01 . . . is within the district court's discretion." *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 98 (Minn. App. 2009) (quotation omitted). A district court abuses its discretion when it issues an OFP that lacks evidentiary support. *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004). An OFP lacks evidentiary support when the findings are clearly erroneous, contrary to the weight of the evidence, or not supported by the evidence as a whole. *Id.* This court reviews the record in a light most favorable to the district court's findings. *Pechovnik*, 765 N.W.2d at 99. An appellate court will "neither reconcile conflicting evidence nor decide issues of witness credibility." *Gada*, 684 N.W.2d at 514.

A petitioner seeking an OFP must allege domestic abuse. Minn. Stat. § 518B.01, subd. 4(b) (2014). "Domestic abuse" includes "(1) physical harm, bodily injury, or assault"; (2) "the infliction of fear of imminent physical harm, bodily injury, or assault"; or (3) threats of violence[1] committed against a family or household member by a family or household member. *Id.*, subd. 2(a) (2014).

---

[1] The legislature recently changed the name of the crime "terroristic threats" to "threats of violence." *See* 2015 Minn. Laws ch. 21, art. 1, § 109, subd. 10, at 234 (changing the headnote for Minn. Stat. § 609.713 (2014), from "Terroristic Threats" to "Threats of Violence"). Although the OFP was issued before this change, we use the current name of the offense in this opinion.

An OFP may be issued if an individual "manifests a present intention to inflict fear of imminent physical harm, bodily injury or assault." *Boniek v. Boniek*, 443 N.W.2d 196, 198 (Minn. App. 1989). "Present intent to inflict fear of imminent physical harm, bodily injury, or assault can be inferred from the totality of the circumstances, including a history of past abusive behavior." *Pechovnik*, 765 N.W.2d at 99. The phrase "infliction of fear" "implies that the legislature intended that there be some overt action to indicate that appellant *intended* to put respondent in fear of imminent physical harm." *Kass v. Kass*, 355 N.W.2d 335, 337 (Minn. App. 1984). Thus, the definition of domestic abuse requires either "a showing of present harm, or an intention . . . to do present harm." *Id.*

The district court found that "[a]cts of domestic abuse have occurred, including . . . [t]hreats of harm to [Danielle] and others with purpose to cause grave fear in [Danielle]." Daniel claims that the district court failed to identify the threats of harm, or find that the threats of harm were of physical harm, bodily injury, or assault. Daniel claims that the district court also failed to find that the threats of harm caused imminent fear or that Daniel intended to cause imminent fear.

A district court must make specific findings of domestic abuse before issuing an OFP. *Nohner v. Anderson*, 446 N.W.2d 202, 203 (Minn. App. 1989); *Andrasko v. Andrasko*, 443 N.W.2d 228, 230-31 (Minn. App. 1989) (reversing issuance of OFP when district court, among other things, failed to make findings regarding domestic abuse). Here, the district court found that the domestic abuse that occurred was "[t]hreats of harm" to Danielle and others with "purpose to cause grave fear" in Danielle. From this record, we must infer that the "[t]hreats of harm" were based on Danielle's allegations

5

that throughout the marriage Daniel threatened to kill her if she were ever with another man. The district court's findings adequately support the OFP.

*Sufficiency of the evidence*

Daniel next argues that the evidence fails to establish the statutory factors. An OFP lacks evidentiary support when the findings of fact are clearly erroneous, contrary to the weight of the evidence, or not supported by the evidence as a whole. *Gada*, 684 N.W.2d at 514. This court reviews the record in a light most favorable to the district court's findings. *Pechovnik*, 765 N.W.2d at 99; *see Gada*, 684 N.W.2d at 514 (stating that when reviewing an OFP for sufficiency of the evidence, "we view the evidence in the light most favorable to the decision" and "neither reconcile conflicting evidence nor decide issues of witness credibility, which are exclusively the province of the factfinder").

Daniel argues that the evidence fails to show that the harm threatened is imminent because the purported threats of harm occurred months prior to the issuing of the OFP and were contingent on Danielle having an affair. The district court found that domestic abuse occurred in the form of "[t]hreats of harm to [Danielle] and others with purpose to cause grave fear in [Danielle]." Danielle testified that Daniel made these threats throughout the marriage. Thus, although Danielle's father testified regarding two specific instances of witnessing the threats, Danielle's testimony shows that the threats were not limited to those two particular instances. And how, on this record, repeated

death threats by a possessor of firearms could be intended not to cause fear of imminent harm is neither clear nor explained. The evidence supports the OFP.[2]

*Due process*

Daniel also argues that his due-process rights were violated because the district court permitted Danielle to present a case that exceeded the allegations in the petition. Daniel claims that the petition does not allege threats of harm, but actual harm.

Procedural due process guarantees reasonable notice and a meaningful opportunity to be heard. *State ex rel. Marlowe v. Fabian*, 755 N.W.2d 792, 794 (Minn. App. 2008). A petition for an OFP "shall allege the existence of domestic abuse, and shall be accompanied by an affidavit made under oath stating the specific facts and circumstances from which relief is sought." Minn. Stat. § 518B.01, subd. 4(b) (2014). Danielle alleged in the petition that on November 9, 2014, Daniel "stated if [Danielle] was ever seen with another man he would kill the both of us." Daniel was on notice that Danielle alleged threats of harm. The district court held a three-day hearing. Daniel testified, presented witness testimony, and cross-examined Danielle and her witnesses. Daniel was also afforded a meaningful opportunity to be heard. The district court did not violate his due-process rights.

---

[2] We categorically reject Daniel's argument that the harm threatened was not imminent because it was contingent on Danielle having an extramarital affair. To adopt this argument could be read to suggest that an extramarital affair somehow justifies death threats. The unfortunate occurrence of an extramarital affair does not ever justify death threats.

7

*Admissibility of statements Danielle made in counseling*

Daniel next argues that the district court abused its discretion by refusing to allow him to testify regarding statements Danielle made in marriage counseling. Rulings on the admissibility of evidence are within a district court's discretion. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45-46 (Minn. 1997).

Absent a waiver from each family member, a marital therapist cannot disclose information received by a family member in therapy sessions. Minn. Stat. § 148B.39(5) (2014). Here, Danielle did not provide a waiver. The district court ruled that the marriage counselor could not testify regarding comments Danielle made in counseling. The district court also determined that testimony regarding Danielle's mental state was not necessary and ruled that Daniel could not testify regarding comments Danielle made in marriage counseling. Daniel argues that the district court misinterpreted the statute because it prohibits a therapist from disclosing information, but not another individual in the treatment setting.

Even if Daniel was not prohibited from testifying regarding statements Danielle made in counseling, the district court ruled that the evidence was not relevant. Daniel seemingly believed that this testimony would challenge Danielle's credibility. But Danielle testified, and the district court had sufficient opportunity to judge her credibility. And the district court did not find Danielle entirely credible because it found that Danielle failed to prove physical harm. Therefore, the district court was within its discretion in determining that evidence of Danielle's mental state was irrelevant.

*Application of best-interest factors*

Finally, Daniel argues that the district court erred by failing to make findings on the best-interest factors as it related to custody of the parties' son. The district court found that "the safety of [Danielle] require[d] that custody of the child be granted to [Danielle], until the issue is determined in the family law proceeding." The district court may grant relief in the form of awarding

> temporary custody . . . with regard to minor children . . . on a basis which gives primary consideration to the safety of the victim . . . . In addition to the primary safety considerations, the court *may* consider particular best interest factors that are found to be relevant to the temporary custody and parenting time award. [Best-interest] [f]indings . . . are not required with respect to the particular best interest factors not considered by the court.

Minn. Stat. § 518B.01, subd. 6(a)(4) (2014) (emphasis added). Daniel cites the 2002 version of the statute that provided that "[e]xcept for cases in which custody is contested, findings [on the best-interest factors] are not required." Minn. Stat. § 518B.01, subd. 6(a)(4) (2002). The current version does not mandate the district court to consider the best-interest factors. The district court appropriately relied on the safety of Danielle as the basis for awarding her temporary custody until the matter is resolved in family court.

**Affirmed.**[3]

---

[3] Daniel moved this court to strike statements that Danielle's attorney made during oral argument. In response, Danielle moved for sanctions. Because an attorney's statements are not evidence and our decision is based on the record evidence, the motions are denied as unnecessary.