*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0387**

In the Matter of:

Ashley Danielle Martin,
individually and o/b/o M. M. F. and M. B. F., petitioner,
Respondent,

vs.

Kent Michael Freundl,
Appellant.

**Filed December 5, 2016
Affirmed in part and reversed in part
Schellhas, Judge**

Blue Earth County District Court
File No. 07-FA-15-4504

Ashley Danielle Martin, Mankato, Minnesota (pro se respondent)

Steven D. Winkler, Jones and Magnus, Mankato, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges an order for protection granted to respondents, arguing that the district court improperly relied on inadmissible hearsay evidence and that the evidence is insufficient to support the court's findings. We affirm in part and reverse in part.

**FACTS**

Appellant Kent Freundl and respondent Ashley Martin began a romantic relationship in 2008. They began living together in 2009 and have two minor sons, M.M.F. and M.B.F. The parties separated April 1, 2015, and the children resided with Freundl until Martin graduated from nursing school and took her test sometime in May. Thereafter, the parties co-parented their children and shared responsibilities.

Over the weekend of October 30 to November 3, 2015, Freundl had the children at his home. On the morning of November 3, Freundl's parents took the children to school because Freundl began working early that day in his position as a security counselor at a state treatment center. Around 4:30 p.m., Martin texted Freundl about obtaining the children's duffle bags, which the parents used to transport the children's clothes and personal belongings between the parties. At first Freundl was short with his texted responses, but a text-message altercation between the parties soon ensued, fueled in part by Freundl's receipt of "child support papers." Freundl texted Martin that she better not come because he had been drinking a lot. Freundl also texted, "I wouldn't come if I was you. I'll f---ing beat your ass. I'm sick of getting f---ed over by stupid b----es." He also texted that the children would rather be with him. When Martin responded that the text didn't make any sense, Freundl replied, "that text may not have made sense—probably not, I've been drinking heavily since I'm going to pay out my ass to see the kids during work." Freundl later texted, "Turn around, I'm locking my house and don't f---ing come here." Martin, who already had the children in her car, responded, "Should I bring the cops?

You'll give me their stuff." She then called a police station, spoke with a dispatcher, and drove to the police station to request a police escort to Freundl's home.

Two police officers in separate squad cars escorted Martin to Freundl's home. The children were seated in the rear seat of Martin's car. When the police and Martin arrived, Freundl was sitting on the curb drinking a beer and talking on the telephone. He walked to his deck, retrieved the children's duffle bags, and walked back to the car and began screaming at the police officers and at Martin for bringing the "f---ing cops." He put the bags in the back of Martin's car and shut the hatchback door. He believes that he opened the door to the children's seat and gave M.M.F. a hug before putting the duffle bags in the car. But he continued to behave belligerently toward the police. The officers then instructed Martin to get into her car, and one of the officers approached Freundl and spoke to him about a foot from his face. The children began screaming and crying, and the officers told Martin to go home. Later, the police contacted Martin and told her that Freundl had made a 911 call in which he threatened to kill her and the officers.

On November 4, 2015, Martin sought an order for protection (OFP) for herself and the children, and the district court granted it ex parte on November 5. After an evidentiary hearing on January 8, 2016, the court granted an OFP, effective until January 8, 2018, on behalf of Martin and the parties' children.

This appeal follows.

## DECISION

A district court is authorized to issue an OFP to "restrain the abusing party from committing acts of domestic abuse." Minn. Stat. § 518B.01, subd. 6(a)(1) (2014).

3

"Domestic abuse" includes "(1) physical harm, bodily injury, or assault"; or "(2) the infliction of fear of imminent physical harm, bodily injury, or assault" that is "committed against a family or household member by a family or household member." *Id.*, subd. 2(a)(1)−(2) (2014). "The decision to grant an OFP under the Minnesota Domestic Abuse Act, Minn. Stat. § 518B.01 . . . is within the district court's discretion." *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 98 (Minn. App. 2009) (quotation omitted).

Freundl argues that the evidence is insufficient to support the OFP. A petitioner must prove the existence of domestic abuse by a preponderance of the evidence. *Oberg v. Bradley*, 868 N.W.2d 62, 64 (Minn. App. 2015). "A district court's decision to issue an order for protection under the Minnesota Domestic Abuse Act will be reversed on appeal when it lacks sufficient evidentiary support." *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004). An OFP lacks evidentiary support when the findings are clearly erroneous, contrary to the weight of the evidence, or not supported by the evidence as a whole. *Id.* On appeal, "[w]e neither reconcile conflicting evidence nor decide issues of witness credibility, which are exclusively the province of the factfinder." *Id.* "[W]e review the record in the light most favorable to the district court's findings, and we will reverse those findings only if we are left with the definite and firm conviction that a mistake has been made." *Pechovnik*, 765 N.W.2d at 99 (quotation omitted).

At the evidentiary hearing, both Freundl and Martin testified, and Martin offered the following exhibits:

> **Exhibit A:** 11/3/2015 Police Incident Report
> **Exhibit B:** 07-CR-15-4511 Criminal Complaint
> **Exhibit C:** 12/9/15 Police Incident Report

4

**Exhibit D:** 07-CR-15-5185 Criminal Complaint.

Over Freundl's hearsay objection to exhibits A and D, the court admitted the exhibits "not for the truth of what is contained in the reports but rather that the reports were made and that an incident occurred," saying "I will take note of that." Freundl did not object to the admission of exhibits B and C.

### *Issuance of OFP to protect Martin*

Martin testified that Freundl's conduct caused her to feel fear and anxiety for herself on November 3, 2015. She also testified about the content contained in exhibits A and D, including Freundl's 911 call and other matters. The district court sustained Freundl's objection that the testimony contained inadmissible hearsay. Freundl argues that the district court erroneously admitted exhibits A and D and that without those exhibits, the evidence is insufficient to support the OFP. Although the court may have erred by admitting exhibits A and D because they contained hearsay, including Freundl's alleged threats against Martin and the officers made during a 911 call, any error was harmless. Even without the exhibits, Martin's unrefuted testimony about Freundl's text threats to harm her was sufficient to support the issuance of the OFP as to Martin. "An OFP is justified if a person manifests a present intention to inflict fear of imminent physical harm, bodily injury, or assault on the person's spouse." *Pechovnik*, 765 N.W.2d at 99. "Present intent to inflict fear of imminent physical harm, bodily injury, or assault can be inferred from the totality of the circumstances, including a history of past abusive behavior." *Id.* "An overt physical act is not necessary to support the issuance of an OFP." *Id.*

We also note that even if the district court had excluded exhibits A and D, Freundl did not object to the district court's admission of exhibit B, which describes Freundl's 911 call and his ensuing threats to Martin and the police officers. The record therefore contains unobjected-to evidence about Freundl's alleged 911 threats. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (concluding that objections not argued to and considered by the district court are waived).

Freundl argues that because the record contains no evidence of past domestic abuse, the evidence is insufficient to support the issuance of an OFP. But past abuse is only one factor in determining whether an OFP is necessary to protect a petitioner. *See Boniek v. Boniek*, 443 N.W.2d 196, 198 (Minn. App. 1989) ("Past abusive behavior, although not dispositive, is a factor in determining cause for protection.").

In its OFP, the district court found that domestic abuse occurred, as follows:

> [Freundl] threatened to kill [Martin] in a 911 emergency call, indicating that if she called the cops again, she would be dead and police would have a murder on their hands. [Freundl] doesn't recollect these statements because he was drinking so heavily. He also texted [Martin], threatening to kick her ass. He displayed behavior at the time of an exchange of property when the children were present that frightened and alarmed all three victims.

We conclude that Freundl's text-message threats toward Martin and his threats made during his 911 call constitute sufficient evidence to support the district court's finding that Freundl committed domestic abuse against Martin. We therefore affirm that order.

6

*Issuance of OFP to protect M.M.F. and M.B.F.*

"[A]n OFP may be granted only to a victim of domestic abuse." *Schmidt ex rel. P.M.S. v. Coons*, 818 N.W.2d 523, 529 (Minn. 2012). Martin testified that she felt fear and anxiety for herself and her children because of Freundl's behavior on November 3, 2015.[1] The district court found that Freundl's conduct "frightened and alarmed all three victims." Although the evidence supports a finding that the children were frightened and alarmed by Freundl's conduct and witnessing the events of November 3, 2015, nothing in the record would support a finding that Freundl threatened the children, intended to cause fear in them that he would cause them bodily harm, or caused the children to fear that he would cause them bodily harm.

"[U]se of the phrase 'infliction of fear' in the [domestic abuse] statute implies that the legislature intended that there be some overt action to indicate that appellant *intended* . . . to put respondent in fear of *imminent* . . . physical harm." *Bjergum v. Bjergum*, 392 N.W.2d 604, 605 (Minn. App. 1986) (quoting *Kass v. Kass*, 355 N.W.2d 335, 337 (Minn. App. 1984)). We conclude that the evidence is insufficient to support the issuance of an OFP on behalf of the children and we therefore reverse that order.

**Affirmed in part and reversed in part.**

---

[1] We cannot help but wonder whether Martin exhausted all alternatives to taking the children with her to the police station and to retrieve the children's belongings, given Freundl's text threats and admitted intoxication.