*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0575**

Lindsay Allyn Yates Plumer,
Respondent,

vs.

Joseph Mark Plumer, Jr.,
Appellant.

**Filed January 8, 2024
Affirmed
Gaïtas, Judge**

Beltrami County District Court
File No. 04-CV-23-195

Evelyn Brown, Evelyn Schneider Law Office, Bemidji, Minnesota (for respondent)

Joseph Plumer, Jr., Bemidji, Minnesota (self-represented appellant)

Considered and decided by Gaïtas, Presiding Judge; Smith, Tracy M., Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**GAÏTAS**, Judge

Appellant-husband Joseph Mark Plumer Jr. challenges the district court's order granting respondent-wife Lindsay Allyn Yates Plumer's petition for a harassment restraining order (HRO), arguing that the district court relied on the incorrect definition of harassment and abused its discretion by granting the HRO. Because the district court did not err in its application of the law, and we discern no abuse of discretion, we affirm.

## FACTS

Husband and wife are divorcing. They have orders for protection (OFPs) against each other. Following a hearing on wife's OFP petition, the district court determined that "[t]he safety of [wife] and the child(ren) requires that parenting time (visitation) be limited," and imposed limits on husband's parenting time.

During the divorce proceedings, wife also petitioned for an ex parte HRO. Her petition alleged that husband had followed, monitored, or pursued her, and had interfered with her schooling and employment. The district court denied wife's petition for an ex parte HRO and set the matter for a hearing. At the hearing, the evidence was as follows.

Wife testified that, after the OFP went into effect, husband "engaged in continued acts of harassment or stalking," which she stated caused her to be in "fear of harm." According to wife, husband looked in her car, drove by a restaurant where she was having dinner, and drove through the parking lot of a store while she was shopping inside.

Wife testified that husband also sent messages to her family members. She testified that husband shared screenshots of social-media posts from her private accounts with her mother and grandmother. Although wife tried to prevent husband from viewing her social-media posts by "block[ing]" him, she testified that he likely obtained the screenshots from a mutual friend. Wife testified that husband continued sending messages to her mother and grandmother even after they asked him to stop. Based on these continued contacts, wife's mother and grandmother obtained an HRO against husband.

Wife also testified that, on several occasions, husband contacted the university where she was pursuing her master's degree. She testified that he requested—and

2

received—a nonpublic schedule of her classes. Then, according to wife, husband emailed numerous individuals at the university, including deans and the provost, accusing a professor of having an inappropriate relationship with wife. Husband's email threatened to notify other students in the program and local news stations. Wife testified that when she saw the email, she was "shocked," "embarrassed," "humiliated," and "felt really scared and invaded." Eventually, wife testified, she withdrew from school because she suffered "[h]umiliation around all of this, as well as an increase in [her] mental health disability symptoms."

Wife testified that husband's actions also adversely affected her employment. She testified that she suspected she was fired from a job due to husband's interference. Pursuing the HRO impacted wife's schedule at her current job. And, according to wife, her colleagues were "talking about" her situation.

Husband also testified at the hearing. He did not deny the conduct that wife alleged. But he testified that his actions did not constitute harassment. He testified that he forwarded social-media messages to wife's mother and grandmother because he was "good friends" with these family members and was concerned about his children. Husband also acknowledged contacting wife's university on "several occasions" and threatening to contact other students and the media. According to husband, he did so out of concern for his children and the university.

Following the hearing, the district court found that "[t]here are reasonable grounds to believe that [husband] has engaged in harassment which has or is intended to have a substantial adverse effect on [the] safety, security, or privacy of [wife]" because he:

3

(1) followed, monitored, or pursued her by following her and contacting her school; (2) used social media to harass her by sending derogatory messages to her mother and grandmother; and (3) interfered with her schooling, family, and friend relationships. The district court granted the HRO—which prohibits husband from harassing wife, having contact with wife, being within 1,000 feet of wife's home, disparaging wife in social-media posts, and contacting any university that wife attends—for a two-year period.

Husband appeals.

**DECISION**

Husband raises two issues on appeal. First, husband argues that the district court relied on an incorrect definition of harassment in considering whether his conduct constituted harassment. Second, husband contends that the evidence does not support the district court's finding that he harassed wife. Wife responds that neither of these issues is properly before us because husband forfeited his challenges to the HRO by not moving the district court for a new trial.

**I.      Husband did not forfeit his appellate issues by not moving for a new trial.**

As a threshold issue, we consider wife's assertion that husband forfeited his appellate issues when he failed to move the district court for a new trial under the rules of civil procedure. Because the law does not require an appellant to move for a new trial to obtain appellate review of an HRO proceeding, we reject wife's argument.

In arguing that husband's failure to seek a new trial forfeited his appellate challenges to the HRO, wife relies on "the general rule that matters such as trial procedure, evidentiary rulings and jury instructions are subject to appellate review only if there has been a motion

4

for a new trial in which such matters have been assigned as error." *Sauter v. Wasemiller*, 389 N.W.2d 200, 201 (Minn. 1986); *see also* Minn. R. Civ. P. 59.01(g) (authorizing a district court to grant a new trial where the decision "is not justified by the evidence, or is contrary to law"). However, HRO proceedings are special proceedings. *Fiduciary Found., LLC ex rel. Rothfusz v. Brown*, 834 N.W.2d 756, 761 (Minn. App. 2013) ("A proceeding is special, within the ordinary meaning of the term special proceeding, when the law confers a right, and authorizes a special application to a court to enforce it." (quotations omitted)), *rev. denied* (Minn. Sept. 17, 2013). In a special proceeding, a motion for a new trial is not authorized unless the statute authorizing that special proceeding states otherwise, or the special proceeding actually involves a trial. *Schlitz v. City of Duluth*, 449 N.W.2d 439, 441 (Minn. 1990); *see also Parson v. Argue*, 344 N.W.2d 431, 431 (Minn. App. 1984) (reasoning that if a case never proceeds to trial, then "a motion for a new trial is an anomaly" (quotation omitted)). The HRO statute does not provide for a trial or a new trial; it provides for a "hearing." Minn. Stat. § 609.748, subd. 3 (2022). Accordingly, under the rules of civil procedure, husband had no authority to move for a new trial following the district court's HRO order. We therefore conclude that husband did not forfeit his arguments on appeal by failing to pursue such relief below.

## II. The district court properly applied the law.

Husband argues that the district court relied on the wrong definition of "harassment" in determining that husband harassed wife. Because the record and the HRO statute do not support husband's argument, we disagree.

Minnesota Statutes section 609.748 (2022) authorizes "[a] person who is a victim of harassment . . . [to] seek a restraining order from the district court." Minn. Stat. § 609.748, subd. 2(a). Under this section, a court may issue an HRO if it finds "that there are reasonable grounds to believe that the respondent has engaged in harassment." *Id.*, subd. 5(b)(3). The term "harassment" as used in this section is defined, in relevant part, as:

> a single incident of physical or sexual assault, a single incident of harassment . . . , a single incident of nonconsensual dissemination of private sexual images . . . , or repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target[.]

*Id.*, subd. 1(a)(1).

Husband contends that the district court applied the definition of harassment in another statute, Minnesota Statutes section 609.749 (2022), which criminalizes certain harassment offenses. Section 609.749, subdivision 2(c)(2), states that a person commits harassment if the person "follows, monitors, or pursues another." Husband argues that the HRO itself—which is a form order containing various boxes that a district court can check to identify the harassing conduct found—shows that the district court relied on the language of the criminal statute, section 609.749, subdivision 2(c)(2), to find harassment. He points out that the district court checked a box on that form order indicating that he "[f]ollowed, monitored, or pursued" wife. And he notes that, because these terms are only included in

6

the criminal statute and are not included in section 609.748, the district court relied on the wrong definition of harassment.

To address husband's argument, we must consider whether the definition of harassment in section 609.748, subdivision 1(a)(1), could include the conduct described in section 609.749, subdivision 2(c)(2)—following, monitoring, or pursuing another. This presents a question of statutory interpretation, which we review de novo. *Peterson v. Johnson*, 755 N.W.2d 758, 761 (Minn. App. 2008). The goal of statutory interpretation is to "ascertain and effectuate the intention of the legislature." *Christianson v. Henke*, 831 N.W.2d 532, 536 (Minn. 2013) (quotations omitted). In discerning the legislature's intent, the "plain language of the statute is [the] best guide." *Rodriguez v. State Farm Mut. Auto. Ins. Co.*, 931 N.W.2d 632, 634 (Minn. 2019). When the meaning of a statute is unambiguous, the plain language controls. *State v. Boecker*, 893 N.W.2d 348, 351 (Minn. 2017).

We conclude that the acts of following, monitoring, or pursuing could constitute harassment under the definition of that term in section 609.748, subdivision 1(a)(1). Under that subdivision, harassment includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." Minn. Stat. § 609.748, subd. 1(a)(1). Given the broad language of the definition of harassment under section 609.748, subdivision 1(a)(1), the acts of following, monitoring, or pursuing could be "repeated incidents of intrusive or unwanted acts, words or gestures" that substantially impact "the safety, security, or privacy of another."

Because the plain language of section 609.748, subdivision 1(a)(1), could encompass the acts of following, monitoring, or pursuing, we cannot conclude that the district court relied on the wrong statutory definition of harassment. We therefore reject husband's legal challenge to the HRO in this matter.

**III.** **Because the evidence supported the district court's determination that there were reasonable grounds to believe that husband engaged in harassment, the district court did not abuse its discretion in issuing the HRO.**

Husband argues that the evidence presented at the hearing was insufficient to support the district court's decision to issue the HRO. We disagree.

A district court may issue an HRO if it determines "that there are reasonable grounds to believe that [a person] has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3). As noted, harassment includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target." *Id.*, subd. 1(a)(1). This includes conduct that "goes beyond an acceptable expression of outrage and civilized conduct, and instead causes a substantial adverse effect on another's safety, security or privacy." *Kush v. Mathison*, 683 N.W.2d 841, 846 (Minn. App. 2004), *rev. denied* (Minn. Sept. 29, 2004). "[S]ection 609.748 requires both objectively unreasonable conduct or intent on the part of the harasser and an objectively reasonable belief on the part of the person subject to harassing conduct." *Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006), *rev. denied* (Minn. Mar. 28, 2006).

8

We review a district court's decision to issue an HRO for an abuse of discretion. *Peterson*, 755 N.W.2d at 761. A district court abuses its discretion "if it makes findings of fact that are not supported by the record, misapplies the law, or resolves the matter in a manner that is contrary to logic and the facts on record." *Madden v. Madden*, 923 N.W.2d 688, 696 (Minn. App. 2019). We give "due regard" to the "district court's opportunity to judge the credibility of witnesses." *Kush*, 683 N.W.2d at 843-44. However, we will reverse an HRO if it is not supported by sufficient evidence. *Id.* at 844.

The district court found that there were reasonable grounds to believe that husband engaged in harassment that had, or was intended to have, a substantial adverse effect on wife's safety, security, or privacy. Because the evidence supports that finding, we discern no abuse of discretion.

The evidence established that husband engaged in "repeated incidents of intrusive or unwanted acts, words, or gestures." *See* Minn. Stat. § 609.748, subd. 1(a)(1). Wife testified—and husband did not deny—that husband followed wife on multiple occasions, sent derogatory messages to wife's mother and grandmother, contacted multiple individuals at wife's school alleging that wife was involved in an inappropriate relationship, and threatened to go to the media with his accusations. And the evidence established that husband's conduct had a substantial adverse effect on wife's safety, security, and privacy. At the hearing, wife explained that husband's conduct significantly affected her mental health, her sense of safety and security, and her privacy. She testified that husband's conduct made her feel "traumatized," "shocked," "dehumanized," "embarrassed," "humiliated," "scared," and "invaded."

9

Husband contends that his conduct did not amount to harassment. Essentially, he argues that the district court could have drawn different conclusions from the evidence presented. However, on appeal, we do not reweigh the district court's credibility determinations. *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004). In granting wife's HRO petition, the district court implicitly found wife's testimony to be credible. *See Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009) (observing that, in issuing an OFP, the district court implicitly found one party to be more credible than another). And we decline to reweigh the district court's credibility determinations on appeal. *See id.*

Wife's testimony at the hearing, which the district court clearly credited, provided the district court with a sufficient basis to conclude that there were reasonable grounds to believe that husband engaged in harassment. Accordingly, the district court did not abuse its discretion in issuing the HRO.

**Affirmed.**